# United States Court of Appeals
## For the First Circuit

No. 13-1674

UNITED STATES OF AMERICA,

Appellee,

v.

CARLOS H. TORRES-LANDRÚA, a/k/a Carlitos,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Torruella, Thompson, and Barron,
Circuit Judges.

Linda Backiel, for appellant.
Jenifer Yois Hernández-Vega, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Juan Carlos Reyes-Ramos, Assistant United States Attorney, were on brief, for appellee.

April 10, 2015

**TORRUELLA, Circuit Judge**.   Defendant Carlos Torres-Landrúa ("Torres") was charged with two counts of drug-trafficking and one count of money laundering.   He entered a straight guilty plea on all counts and was sentenced to a 168-month term of imprisonment, at the very bottom of his Guidelines imprisonment range.   Torres now appeals, arguing that the district court violated his due process rights and erred by declining to award him a minor role adjustment and a downward departure for coercion and duress.   He also challenges the substantive reasonableness of his sentence.   Finding no error or abuse of discretion, we affirm.

## I. Facts

Because Torres pled guilty, our discussion of the facts is drawn from the change-of-plea colloquy, the Presentence Report ("PSR"), and the transcript of the sentencing hearing.   See United States v. Cintrón-Echautegui, 604 F.3d 1, 2 (1st Cir. 2010).

Torres, together with at least fifteen other individuals, participated in a drug-trafficking conspiracy that began on or about the year 2005 and ended in July 2010, and was headed by José Figueroa-Agosto, a/k/a "Junior Cápsula." The conspiracy transported large amounts of cocaine via motor vessels from the Dominican Republic to Puerto Rico.   Some of the imported cocaine was sold locally in Puerto Rico, while the rest was transported to the continental United States for sale.   Some of the drug proceeds were smuggled into the Dominican Republic on these same vessels.

-2-

Torres participated in at least five of these trips. He smuggled between 150 to 700 kilograms of cocaine per trip and was paid a total of approximately $350,000 for his smuggling ventures. Each trip lasted three or four days, during which time he and his co-conspirators would stay at Casa de Campo, an elite luxury resort in La Romana, and would be entertained by female strippers before returning to Puerto Rico with huge shipments of cocaine.

The drug-trafficking conspiracy was paired with a money laundering conspiracy, which engaged in financial transactions to promote the drug-trafficking conspiracy and conceal the illegitimate nature of the drug proceeds. To that end, the conspiracy used drug proceeds to purchase motor vessels to be used in the drug smuggling voyages from the Dominican Republic, as well as real estate, motor vehicles, and businesses. In so doing, the organization would generally hire individuals with qualifying credit ratings to act as "straw owners."

Torres was also a member of the money laundering conspiracy. He had one of the vessels that had been purchased with drug proceeds transferred to his name. Torres then loaded this vessel with drugs in the Dominican Republic and smuggled the drugs into Puerto Rico. Torres was also paid exorbitant amounts of money, such as $11,000 and $25,000, to simply wash and repair jet skis in the Dominican Republic. This money, paid in cash, was in actuality obtained from drug sales.

Torres's biggest and last drug smuggling voyage took place in January 2008.  On that occasion, he smuggled 700 kilograms of cocaine and was paid $90,000.  After this trip, Torres did not participate in any other trip, nor was he called by any co-conspirator to participate in any further conspiracy activity.

More than two years later, in November 2010, Torres was charged, along with others, in a multi-count indictment.  Specifically, Torres was charged with conspiracy to import controlled substances into the customs territory of the United States, in violation of 21 U.S.C. § 963 (Count I), conspiracy to possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846 (Count II), and conspiracy to launder money, in violation of 18 U.S.C. § 1956(h) (Count V).  Torres entered a straight guilty plea as to all counts.

The PSR was disclosed to the parties on September 25, 2012, and the parties were advised that any objection to the facts and Guidelines applications should be filed in writing within fourteen days.  No objections were filed within the prescribed deadline.  Two months later, however, on November 28, 2012, through his sentencing memorandum, Torres objected to some sections of the PSR, including the PSR's guidelines calculation.

The sentencing hearing took place on April 26, 2013.  There, Torres argued that he complied with the requirements for the

"safety valve" sentencing relief[1] under United States Sentencing Guidelines ("U.S.S.G.") § 5C1.2 and was, thus, entitled to a two-level reduction under U.S.S.G. § 2D1.1(b)(17).[2] The district court granted said two-level reduction. Torres also argued for a minor role reduction under U.S.S.G. § 3B1.2, alleging that he only had a minor part in the drug conspiracy, and requested a downward departure under U.S.S.G. § 5K2.12 for alleged coercion and duress. The district court denied these other requests.

According to his guilty plea, Torres was responsible for 150 kilograms or more of cocaine, triggering a base offense level of thirty-eight. A two-level increase was imposed pursuant to U.S.S.G. § 2S1.1(b)(2)(B), because Torres was convicted under 18 U.S.C. § 1956 (money laundering). A two-level reduction was granted for his compliance with the "safety valve" sentencing relief, and an additional three-level reduction was granted for his acceptance of responsibility. This resulted in a total offense level of thirty-five. Since Torres had a criminal history category of I, the applicable advisory Guidelines sentencing range ("GSR") was 168-210 months of imprisonment, with a fine ranging from

---

[1] The purpose of the "safety valve" provision is to "mitigate the harsh effect of mandatory minimum sentences on first-time, low-level offenders in drug trafficking schemes." United States v. Padilla-Colón, 578 F.3d 23, 30 (1st Cir. 2009) (internal quotation marks omitted). In order to be eligible for its relief, a defendant must meet five requirements, see 18 U.S.C. § 3553(f)(1)-(5), none of which is at issue here.

[2] Codified at U.S.S.G. § 2D1.1(b)(16) at the time of sentencing.

$17,500 to $4,000,000 and a term of supervised release of at least five years as to Counts I and II, and no more than three years as to Count V, to be served concurrently.  The government requested that Torres be sentenced to no less than 168 months of imprisonment, while Torres asked for a below-Guidelines sentence of less than ten years of imprisonment.  Ultimately, the court sentenced Torres at the bottom of the GSR -- to 168 months of imprisonment -- followed by supervised release for a term of five years as to Counts I and II, and three years as to Count V, to be served concurrently.  No fine was imposed.  This appeal followed.

## II.  Discussion of Torres's Claims

### A.  Torres's Due Process Rights Were Not Violated at His Sentencing Hearing

Torres claims that the district court erred at the sentencing hearing by not allowing him to present evidence of his alleged minor role and by excluding his testimony about what he heard from others in the conspiracy, which he intended to offer as proof that he was coerced into conspiring with his co-defendants. He also claims that the district court erred by cross-examining Torres and inquiring as to whether he faced retaliation after he left the conspiracy. According to Torres, these errors amounted to a violation of his due process rights.  A careful review of the record reflects that Torres's allegations lack merit.

At sentencing, when Torres intended to testify about his role in the drug conspiracy, the district court pointed out that

-6-

Torres had not objected to the PSR,[3] which had characterized Torres as a boat captain and had not recommended that Torres be granted any reduction for his role in the offense. Nevertheless, the court clearly stated that it had considered Torres's arguments included in his sentencing memorandum regarding his alleged minor role in the offense. Moreover, the record shows that his counsel was also allowed to argue vigorously about his alleged minor role, including that he was not a boat captain and did not have a boat captain's license.

The record also reflects that Torres was indeed allowed to testify regarding the alleged coercion he felt from his co-defendants. Specifically, Torres testified about his relationship with Kareem Boschetti ("Boschetti") and how Boschetti first got him involved with the conspiracy and introduced him to Junior Cápsula. He also testified about Junior Cápsula's allegedly violent and aggressive behavior (including the supposed shooting of a truck driver who had cut him off on the road), as well as his alleged threats to Boschetti and to another co-conspirator named Diego Colón. Torres further testified that Junior Cápsula and his bodyguards would be armed, while no one else was allowed to be

---

[3] See D.P.R. Crim. R. 132(b)(3) (requiring PSR objections to be filed within fourteen days); United States v. Ocasio-Cancel, 727 F.3d 85, 92 (1st Cir. 2013) ("When a fact is set out in a presentence investigation report and is not the subject of a timely objection, the district court may treat the fact as true for sentencing purposes.").

armed, and that Junior Cápsula would question co-conspirators at gun-point. Torres also testified that he felt coerced during his multiple trips to the Dominican Republic where he stayed at a luxury resort and spent time with strippers that "were brought to him." According to Torres, despite "enjoy[ing]" the strippers, he was coerced because he "had to pay" for them, even though he had not asked for strippers. In addition, Torres was also allowed to testify about Junior Cápsula's alleged kidnaping of Boschetti towards the end of his participation in the conspiracy. Finally, during cross-examination Torres also testified about his decision not to participate in any other trip. Torres acknowledged that his decision to no longer participate was communicated to Junior Cápsula, and that he was never called by any co-conspirator to participate in another trip after that intention was communicated. He also admitted not suffering any retaliation for his decision to not participate further. After Torres testified, his counsel was allowed to argue on his behalf -- both as to the alleged coercion and minor role. Counsel continued his argument until he started repeating himself.

Torres argues that the district court prevented him from responding to some questions made by his counsel. Although the record reflects that the government objected to some of the questions made by Torres's counsel and that some of these

objections were sustained,[4] the district court acted within its discretion in excluding the testimony objected to, since Torres lacked personal knowledge of it. The excluded testimony constituted hearsay evidence and Torres's personal speculation, which the court found unreliable.

Although the Rules of Evidence do not apply at a sentencing hearing, see United States v. Ocasio-Cancel, 727 F.3d 85, 91 (1st Cir. 2013), the court must be assured that any evidence carries "sufficient indicia of reliability to support its probable accuracy." United States v. Zuleta-Álvarez, 922 F.2d 33, 36 (1st Cir. 1990) (internal quotation marks and citation omitted). We have recognized that the district court has "almost unfettered discretion in determining what information it will hear and rely upon in sentencing deliberations," and to decide "not only the relevance but also the reliability of the sentencing information." United States v. Geer, 923 F.2d 892, 897 (1st Cir. 1991) (internal quotation marks and citations omitted). Given that the statements excluded were basically rumors,[5] the district court did not abuse its discretion in concluding that they were unreliable and excluding them.

---

[4] Torres intended to testify about what other people said about Junior Cápsula.

[5] Torres's counsel made a proffer of his client's expected testimony.

In conclusion, after carefully reviewing the entire transcript, it is clear that, through his sentencing memorandum, his testimony at sentencing, and his counsel's arguments, Torres effectively communicated the basis for his requests on adjustments and deviations to the Sentencing Guidelines during his sentencing hearing. As discussed infra, the district court, however, reached a different conclusion within its discretion; one that was expounded and clarified for the record by the district judge.

Finally, contrary to Torres's assertions, the district court did not err by cross-examining him and inquiring whether he faced retaliation after he left the drug conspiracy. A judge "has a perfect right -- albeit a right that should be exercised with care -- to participate actively" in the proceedings. Loque v. Dore, 103 F.3d 1040, 1045 (1st Cir. 1997). It is "beyond cavil that a trial judge in the federal system retains the common law power to question witnesses and to analyze, dissect, explain, summarize, and comment on the evidence." Id. The judge's right to participate is even greater at sentencing than during the jury trial, given his role in sentencing. Although, of course, there are lines a judge should not cross, such as unbalanced participation, becoming an advocate or otherwise using his judicial powers to advantage or disadvantage a party unfairly, see id., there is no indication in the transcript of Torres's sentencing hearing that the district court crossed the line here. The court's

questioning was short, neutral, and relevant to the issues. Having claimed that he participated in the drug conspiracy out of fear of retaliation, it was within the district judge's power to inquire from Torres when his participation in the conspiracy had ended and if he had suffered any kind of retaliation for it. Accordingly, Torres's due process rights were not violated during his sentencing hearing.

## B. Denial of Role Reduction

"[W]e rarely reverse a district court's decision regarding whether to apply a minor role adjustment." United States v. Bravo, 489 F.3d 1, 11 (1st Cir. 2007); see also United States v. Olivero, 552 F.3d 34, 41 (1st Cir. 2009) ("[B]attles over a defendant's status . . . will almost always be won or lost in the district court." (internal quotation marks and citation omitted)).

The Sentencing Guidelines allow a court to award a two-level reduction to a defendant who was a minor participant in the criminal activity. U.S.S.G. § 3B1.2. "To qualify as a minor participant, a defendant must prove that he is both less culpable than his cohorts in the particular criminal endeavor and less culpable than the majority of those within the universe of persons participating in similar crimes." United States v. Trinidad-Acosta, 773 F.3d 298, 315-16 (1st Cir. 2014) (quoting United States v. Santos, 357 F.3d 136, 142 (1st Cir. 2004)).

Before the district court, Torres argued in his sentencing memorandum and at his sentencing hearing that he should be granted a two-level reduction for his alleged minor role in the drug conspiracy. The district court pointed out that Torres had not objected to the PSR's characterization of Torres's role. Nevertheless, it considered Torres's request, but rejected it, finding that Torres's participation in at least five smuggling ventures, in which he was entrusted with huge amounts of drugs and smuggled around 2,000 kilograms of cocaine, and for which he was paid $350,000, did not make him a minor participant.

On appeal, Torres alleges for the first time that his minor role should be considered in terms of the money laundering conspiracy and not of the drug conspiracy. According to Torres, pursuant to U.S.S.G. § 2S1.1 and its application note 2(C),[6] the court should disregard any activity of the drug conspiracy, even if it is related to that of the money laundering conspiracy and, instead, should focus exclusively on the elements and acts of money laundering included in Count V of the indictment. Following this

---

[6] Application note 2(C) states as follows:

> Notwithstanding § 1B1.5(c), in cases in which subsection (a)(1) applies, application of any Chapter Three adjustment shall be determined based on the offense covered by this guideline (i.e., the laundering of criminally derived funds) and not on the underlying offense from which the laundered funds were derived.

U.S.S.G. § 2S1.1 cmt. n.2(C).

-12-

line, Torres argues that his participation in the money laundering conspiracy was minor because he was merely a "straw man," whose only participation was to allow a vessel's title to be transferred to his name,[7] while other co-conspirators played more active roles, such as purchasing marine vehicles with drug proceeds.

In response, the government argues that Torres's claim regarding his alleged minor role in the money laundering is waived because he did not advance it at the district court. The government also argues that, even if we were to consider this issue on the merits, U.S.S.G. § 2S1.1's application note 2(C) does not abrogate the Guidelines's relevant conduct rules, as set forth in U.S.S.G. § 1B1.3, which state that all adjustments must be made on the basis of all relevant conduct, and not solely on the basis of elements and acts cited in the count of conviction. See U.S.S.G. § 3B. Accordingly, the government posits that some of the activity of the drug conspiracy constitutes conduct relevant to the money laundering and, thus, should be taken into account in evaluating Torres's role in the money laundering conspiracy. Furthermore, the government argues that, even ignoring the relevant conduct rules, Torres's participation in the money laundering conspiracy exclusively was not minor[8] and that, in any event, he failed to

_____

[7]  He then loaded this vessel with drugs from the Dominican Republic and smuggled them into Puerto Rico.

[8]  The government argues that, in addition to Torres's participation in a transaction designed to conceal the ownership of

-13-

show that he was less culpable than the majority of those participating in money laundering offenses, which on its own justifies the denial of a role reduction.

We agree with the government that Torres's argument is waived. First, the PSR recommended that no adjustment be granted for Torres's role in the offense. Torres did not object to this within the deadline established to do so.[9] Then, two months later, he argued in his sentencing memorandum that he had a minor role in the drug conspiracy, and all his discussion as to this issue was centered on the drug conspiracy. At the sentencing hearing, he once again requested a minor role reduction, exclusively arguing it as to the drug conspiracy. However, after that proved unsuccessful, he now turns to a new argument different than the one he presented below. He has now shifted the focus of his argument from the drug conspiracy to the money laundering conspiracy and argues that the court erred in considering the precise evidence that he asked it to consider. Having switched tactics this way so late in the game, Torres has waived the argument that he now seeks to pursue. See United States v. Acosta-Colón, 741 F.3d 179, 209-10

the boat used by him and his cohorts during Torres's last and most profitable drug smuggling venture, Torres also engaged in money laundering several times by washing and repairing jet skis and vessels for "absurdly high amounts of cash" (such as $11,000 and $25,000), "knowing that the transactions were a facade designed to conceal proceeds from unlawful activity."

[9] See footnote 3, supra.

-14-

(1st Cir. 2013) ("[A] criminal defendant, unhappy with a judge's ruling yet persuaded that his original arguments lacked merit, cannot switch horses mid-stream in hopes of locating a swifter steed." (quoting United States v. Dietz, 950 F.2d 50, 55 (1st Cir. 1991) (internal quotation marks omitted))).[10]

## C.  Denial of a Downward Departure for Coercion or Duress

Torres next argues that the district court erred in not granting his request for a downward departure for coercion or duress.

At sentencing, Torres argued that a departure under U.S.S.G. § 5K2.12 for coercion or duress not amounting to a

---

[10]  Even had Torres not waived his argument, and assuming, without deciding, that the focus should have been on the money laundering activity instead of the drug activity, he would not have been entitled to a minor role reduction because he did not show, as was required under Section 3B1.2(b), that he was less culpable than the majority of those convicted of similar crimes.  See Trinidad-Acosta, 773 F.3d at 315-16.

It is unclear from the briefs whether Torres is also still pressing his argument that he was entitled to a minor role reduction in his offense level based on his alleged minor role in the drug conspiracy.  Nonetheless, out of an abundance of caution, we address it and conclude that he did not show that he was less culpable than the majority of drug trafficking offenders.  See id. Moreover, the district court's findings about Torres's role were supported by the record and, thus, were not clearly erroneous.  See id. at 315 ("The district court's decision whether to grant a downward adjustment for a minor role is usually a fact-based decision that we review for clear error.") (quoting United States v. Rosa-Carino, 615 F.3d 75, 81 (1st Cir. 2010)); see also United States v. Espinal-Almeida, 699 F.3d 588, 619-20 n.30 (1st Cir. 2012) (upholding as a "plausible [sentencing] rationale" the district court's view that when a group of individuals "embark with an adventure" to smuggle 418 kilograms of cocaine into Puerto Rico by boat, "nobody plays a minor role in that boat").

complete defense was warranted because he had been subject to coercion and duress from Junior Cápsula and co-conspirator Boschetti. Specifically, he argued that he and Boschetti had been long-time neighbors and that he saw Boschetti as an older brother. According to Torres, when he was fifteen or sixteen, he started to work part-time as a mechanic at Boschetti's garage. After some time, he became a full-time employee and even got to run the business. Torres claims that, at some point in time, Boschetti started taking him on trips to the Dominican Republic to work on jet skis, for which he was paid exorbitant amounts of cash, which made him suspicious that something illegal was going on. According to Torres, while in the Dominican Republic, he asked Boschetti about what was going on and Boschetti explained to him the illegal nature of the activities. Boschetti then invited Torres to join him in a drug smuggling venture to Puerto Rico, which Torres accepted because he allegedly felt coerced due to his long-time relationship with Boschetti. Torres also claims that he heard stories about Junior Cápsula's violent ways of dealing with situations; that while Torres was in the Dominican Republic, he saw Junior Cápsula pointing guns at co-conspirators while he questioned them; and that Torres was threatened that if he withdrew from the conspiracies, he would suffer retaliation.

At sentencing, Torres claimed that this showed he was subject to coercion and duress that, although not amounting to a

complete defense, entitled him to a downward departure. The district court denied his request.

On appeal, Torres claims the district court erred by allegedly requiring him to prove coercion and duress amounting to a complete defense.

A showing of serious coercion and duress not amounting to a complete defense may still play a role at sentencing to permit a downward departure under the Guidelines.[11] See United States v. Amparo, 961 F.2d 288, 292 (1st Cir. 1992) ("[T]he type and kind of evidence necessary to support a downward departure premised on duress is somewhat less than that necessary to support a defense of duress at trial."); United States v. Sachdev, 279 F.3d 25, 28 (1st

---

[11] To that effect, the Guideline addressing potential departures for coercion or duress states:

> If the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense, the court may depart downward. The extent of the decrease ordinarily should depend on the reasonableness of the defendant's actions, on the proportionality of the defendant's actions to the seriousness of coercion, blackmail, or duress involved, and on the extent to which the conduct would have been less harmful under the circumstances as the defendant believed them to be. Ordinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency. Notwithstanding this policy statement, personal financial difficulties and economic pressures upon a trade or business do not warrant a downward departure.

U.S.S.G. § 5K2.12.

Cir. 2002) (noting that "not all types of coercion or duress may be the basis for a departure"; the duress must be serious).   A defendant must show a subjective belief that a threat has been made, and the district court must also objectively determine that a reasonable person in the defendant's position would perceive there to be a threat amounting to serious coercion or duress. <u>Sachdev</u>, 279 F.3d at 29.   The defendant bears the burden of proving, by a preponderance of the evidence, his eligibility for a Guidelines departure.   <u>Id.</u> at 28.

Torres frames his claim as one of legal interpretation of the amount of coercion or duress required under the Guidelines -- namely, that the district court required him to prove a complete coercion or duress defense to get the departure.   But it is clear from the record that the court did no such thing.   Rather, the district court denied the departure because it found that Torres's allegations lacked credibility and that the exorbitant amounts of cash paid to Torres belied his allegations of serious coercion. Specifically, the district judge stressed that after his last smuggling venture in January 2008, Torres did not participate in any other activity and was not even called by any co-conspirator to make any other trips.   Yet, Torres did not suffer any retaliation whatsoever from Junior Cápsula or anyone else.   Consequently, this argument goes nowhere.

## D.  Reasonableness of Torres's Sentence

We review the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.  Trinidad-Acosta, 773 F.3d at 309.  In conducting this review, we take into account "the totality of the circumstances."  Id.  "Generally, no abuse of discretion is found as long as the court has provided a plausible explanation, and the overall result is defensible."  Id. at 321 (quoting United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008)) (internal quotation marks omitted).  "There is no single reasonable sentence in any particular case but, rather, a universe of reasonable outcomes."  United States v. Walker, 665 F.3d 212, 234 (1st Cir. 2011).

Torres argues that his sentence, at the very bottom of the advisory GSR, is substantively unreasonable because he was sentenced to a term equal or longer than some of his more involved co-conspirators. He claims that the district court "mechanistically applied the Guidelines as calculated in the PSR without considering whether their recommended sentence was appropriate . . . given the circumstances of his involvement," and without considering whether the sentence was "not greater than necessary."

Torres has failed to carry the "heavy burden" of challenging as unreasonable a within-the-range sentence.  See Trinidad-Acosta, 773 F.3d at 309 ("[A] defendant who attempts to brand a within-the-range sentence as unreasonable must carry a

heavy burden." (quoting <u>United States</u> v. <u>Pelletier</u>, 469 F.3d 194, 204 (1st Cir. 2006))); <u>United States</u> v. <u>Clogston</u>, 662 F.3d 588, 592-93 (1st Cir. 2011) ("Challenging a sentence as substantively unreasonable is a burdensome task in any case, and one that is even more burdensome where, as here, the challenged sentence is within a properly calculated GSR.").

At Torres's sentencing hearing, the district court made clear that it had reviewed the advisory Guidelines calculations, as well as all the sentencing factors set forth in 18 U.S.C. § 3553(a), including Torres's history and characteristics, the need to promote respect for the law, to protect the public from further crimes from Torres, and the need for deterrence and punishment.[12] The sentencing court also took into consideration the seriousness of the offense and Torres's role in it, where "drug proceeds were taken from Puerto Rico to the Dominican Republic and multi-kilogram quantities of cocaine were brought from the Dominican Republic to Puerto Rico, using pleasure boats." After taking into consideration all the sentencing factors, the sentencing court concluded that a sentence at the lower end of the GSR was adequate. Torres's different view about the significance of his role in the offense, or his own weighing of the other sentencing factors, does

---

[12] The sentencing judge's statement that he considered all the 18 U.S.C. § 3553(a) sentencing factors "is entitled to significant weight." <u>United States</u> v. <u>Santiago-Rivera</u>, 744 F.3d 229, 233 (1st Cir. 2014).

not mean that the sentencing court's view was unreasonable.  See United States v. Dávila-González, 595 F.3d 42, 49 (1st Cir. 2010) ("A criminal defendant is entitled to a weighing of the section 3553(a) factors that are relevant to his case, not to a particular result." (alteration omitted) (internal quotation marks omitted)).  Nor is the sentence unreasonable because the sentencing court explained some factors more than others.  See United States v. Murphy-Cordero, 715 F.3d 398, 402 (1st Cir. 2013) ("[A] within-the-range sentence typically requires a less elaborate explanation than a variant sentence.").

Furthermore, Torres "is not entitled to a lighter sentence merely because [some of] his co-defendants received lighter sentences."  Dávila-González, 595 F.3d at 50 (internal quotation marks and citation omitted).  This is especially true where, as here, Torres failed to show that they were "identically situated" to him.  See United States v. Wallace, 573 F.3d 82, 97 (1st Cir. 2009).  In any event, "[a] district court's consideration of sentencing disparity aims primarily at the minimization of disparities among defendants nationally," and not among co-defendants.  Dávila-González, 595 F.3d at 49 (internal quotation marks and citation omitted).

In conclusion, Torres's sentence, at the very bottom of his GSR, was within the universe of reasonable outcomes and, thus, defensible.  See Espinal-Almeida, 699 F.3d at 620 (finding that the

-21-

sentence at the "absolute bottom [of] the Guidelines range" imposed on a first time offender convicted of conspiring to smuggle by sea 418 kilograms of cocaine from the Dominican Republic to Puerto Rico, was defensible, and noting that "it will be the rare case in which a within-the-range sentence can be found to transgress the parsimony principle" (internal quotation marks and citation omitted)).

## III. Conclusion

The record reflects that Torres was granted a fair sentencing hearing, that he was not entitled to a minor role reduction, that the denial of a downward departure for serious coercion or duress was within the discretion of the district court, and that his sentence was reasonable. Accordingly, his sentence is affirmed.

**Affirmed.**