# United States Court of Appeals
## For the First Circuit

_____

No. 01-2413

UNITED STATES OF AMERICA,
Appellee,

v.

SANJAY SACHDEV,
Defendant, Appellant.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

_____

Before

Selya, Circuit Judge,
Campbell, Senior Circuit Judge,
and Lynch, Circuit Judge.

_____

J. Martin Richey, Federal Defender Office, for appellant.

Denise Jefferson Casper, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief for appellee.

_____

February 1, 2002
_____

**LYNCH, Circuit Judge**.  At issue in this sentencing appeal is the proper standard for determining whether a defendant has been physically threatened for purposes of a downward departure under the coercion and duress guideline, U.S.S.G. § 5K2.12, p.s. (2000).

Sanjay Sachdev pled guilty to one count of bank larceny, 18 U.S.C. § 2113(b) (2000), and sought a downward departure under U.S.S.G. § 5K2.12.  He argued that he committed the crime, depositing worthless checks and then withdrawing $103,000 from his bank account, because he needed to repay a debt to Atul Patel, and he believed he had been threatened with physical harm if he did not repay.  The district court held an evidentiary hearing, in which it heard testimony from defendant's father (by telephone from Thailand) and Patel (by televideo from California), and agreed to consider defendant's statement in the presentence report as testimony.  The court concluded that, on the facts, it lacked authority to depart downward for coercion or duress.  Sachdev was sentenced to imprisonment of one year and one day, a sentence near the low end of the range.  Sachdev appeals, saying the district court applied the wrong standard under § 5K2.12 to determine whether

he had been threatened, and asks that the case be remanded.[1]  We affirm.

I.

The facts, as found by the district court and undisputed from the evidentiary hearing, are as follows:

Patel and Sachdev were close friends and neighbors beginning in 1998.  In October 1999, Sachdev approached Patel, asking him to invest in a plan to purchase a quantity of clothing to resell to a discount retail store.  Patel invested over $90,000 of his personal savings in the venture, with the understanding that he would receive his investment back with interest within 30 days after the transaction was complete.  A month later, Sachdev and his family moved from California to Boston.  In late 1999, at Patel's request, Sachdev repaid him about $21,000.

Sachdev's business endeavor did not go as planned, as the retailer lost interest in purchasing the goods.  During the winter and spring of 2000, Patel and Sachdev were in frequent phone contact, with Patel trying to ascertain the status of his investment. At some point, in an attempt to hasten the repayment, Patel falsely told Sachdev that he had borrowed the investment money and was himself being pressured to

---

[1]     This court denied Sachdev's motion to remain on release pending appeal, but expedited his appeal.

repay his creditors. Sachdev felt the conversations with Patel were threatening in nature. In March, Sachdev sent Patel his family's jewelry to hold as collateral. There was also evidence that Sachdev sought medical assistance for "severe stress-related insomnia" during April of 2000.

Patel also called Sachdev's father in Thailand twice, in March of 2000 and again in April. Patel testified that he never physically threatened Sachdev or his family in any of his conversations with Sachdev or Sachdev's father. Sachdev's father testified that there were three or four calls from Patel, that Patel said there would be "trouble" if he was not repaid, that Patel's tone was threatening, and that the calls made him fear for the safety of his son and his son's family. Patel also told the father that he intended to seek legal advice about how to proceed. Patel did, in fact, seek the advice of an attorney, who assisted him in drawing up a promissory note for Sachdev to repay Patel by May 4. In the week before April 27, when Patel faxed Sachdev the promissory note, Patel called Sachdev sixteen times. After signing the promissory note, Sachdev deposited the bad check on May 4, 2000, so that he could withdraw the $103,000 on May 11, 2000. On June 2, 2000, Sachdev deposited another bad check.

The trial judge found that Patel had called Sachdev with unusual frequency and that both Sachdev and his father believed Patel was threatening physical harm. However, she rejected other allegations

-4-

made by Sachdev in his presentence report statement, including allegations that Patel had threatened to send the Mafia after him and his family, and that Patel had threatened to fly out to Boston with a hitman to look for Sachdev. She concluded that Patel was actually only threatening legal "trouble" and therefore the Guideline's requirement that the coercion involve a threat of physical injury did not apply.

## II.

Defendant presents an issue of first impression for this circuit as to what standard a trial judge should apply in determining whether a defendant has been coercively threatened for purposes of a downward departure under U.S.S.G. § 5K2.12. We review de novo legal holdings construing the meaning of the Guidelines and a finding by a trial court that it lacked discretion to depart. United States v. Mateo, 271 F.3d 11, 13 (1st Cir. 2001);United States v. Saldana, 109 F.3d 100, 103 (1st Cir. 1997).

A defense of duress may play two roles in a criminal case. First, it may be presented at trial in avoidance of criminal liability. See, e.g., United States v. Freeman, 208 F.3d 332, 341 (1st Cir. 2000). The duress defense to criminal liability is strict and is unavailable unless there is no reasonable legal alternative to violating the law that would also avoid the threatened harm. United States v. Bailey, 444 U.S. 394, 410 & n.8 (1980);United States v. Arthurs, 73 F.3d 444, 449 (1st Cir. 1996).

Even if the duress defense to criminal liability is rejected, a lesser showing of duress may still play a role at sentencing to permit a downward departure under the Guidelines. See United States v. Amparo, 961 F.2d 288, 292 (1st Cir. 1992) ("[T]he type and kind of evidence necessary to support a downward departure premised on duress is somewhat less than that necessary to support a defense of duress at trial."); United States v. Cheape, 889 F.2d 477, 480 (3d Cir. 1989). Defendant bears the burden of proof by the preponderance of the evidence of showing eligibility for a Guidelines departure. United States v. Rizzo, 121 F.3d 794, 801 (1st Cir. 1997). The Guideline addressing potential departures for duress states:

> If the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense, the court may decrease the sentence below the applicable guideline range. The extent of the decrease ordinarily should depend on the reasonableness of the defendant's actions and on the extent to which the conduct would have been less harmful under the circumstances as the defendant believed them to be. Ordinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency. The Commission considered the relevance of economic hardship and determined that personal financial difficulties and economic pressures upon a trade or business do not warrant a decrease in sentence.

U.S.S.G. § 5K2.12.

Not all types of coercion or duress may be the basis for a departure. As the Guideline clearly states, economic hardship and

financial distress are forbidden grounds for departure.  Furthermore, mere duress is insufficient.  Id.; see also United States v. Rivera, 994 F.2d 942, 949 (1st Cir. 1993).  The duress must be "serious," in the language of the Guideline.  If the conditions are met, departures based on the grounds described in § 5K1.12 are encouraged.  See generally United States v. Grandmaison, 77 F.3d 555, 560 (1st Cir. 1996).

The district court correctly interpreted the Guideline to require ordinarily that there be threat of physical harm when coercion is invoked at sentencing as a basis for a downward departure.  The Guideline, we think, encompasses both explicit and implicit threats of harm.  Based on its review of the testimony, the district court found that Patel made no explicit threats of harm.  We read the district court's finding, while less clear on the point, as also finding that there was no implicit threat of harm.

If the claimed threat is implicit, as defendant argues here, then questions arise as to how to determine whether there is an implicit threat that falls within the Guidelines.  The Guideline instructs that subjective views of the defendant play some role: "The extent of the decrease ordinarily should depend on . . . the circumstances as the defendant believed them to be."  U.S.S.G. § 5K2.12.  Whether the threats are explicit or implicit, a defendant's

subjective belief that a threat has been made, even if in good faith, is not alone a ground for departure.

The district court must also objectively determine whether a reasonable person in defendant's position would perceive there to be a threat, explicit or implicit, of physical injury, substantial damage to property, or similar injury resulting from the unlawful action of a third party (or from a natural emergency).[2]  In making this determination, particularly where the claim involves implicit threats,

---

[2]      There may be room to consider whether a defendant falls into a group well recognized to have particular vulnerability to coercion or duress for Guideline purposes, such as those suffering from battered person's syndrome.  The Ninth Circuit adopted such an approach in United States v. Johnson. 956 F.2d 894, 898-901 (9th Cir. 1992); see also United States v. Smith, 987 F.2d 888 (2d Cir. 1993) ("Testimony as to [defendant's] unusual susceptibility to coercion would be relevant in determining whether he had an honest but unreasonable belief that he was being coerced."); cf. United States v. Lopez, 938 F.2d 1293, 1298 (D.C. Cir. 1991) (Guideline discouraging consideration of socioeconomic status does not foreclose consideration of domestic violence and its effect on defendant).  Under Johnson, a defendant's sincerely held belief that she was in physical danger might warrant a departure, even if that belief could not be deemed objectively reasonable by an individual without such a history.  956 F.2d at 899.  Alternatively, Johnson may be understood as holding that, as an objective matter, a woman who has been beaten in the past may reasonably view something far less than an explicit threat as constituting a realistic threat of physical harm.  Cf. United States v. Anderson, 139 F.3d 291, 300 (1st Cir. 1998) (noting without deciding issue of whether the fact that defendant had been abused once in past by partner was sufficient to support a duress departure).  Such an approach is consistent with U.S.S.G. § 5H1.3, which prohibits consideration of mental and emotional condition except as provided in the general provisions of Chapter 5. Chapter 5 includes the duress guideline at issue here.

This defendant presents no such special condition and so we need not decide the issue.

there are at least three questions to be considered: (i) the actual intent of the person alleged to have made the threat; (ii) the subjective understanding of the defendant; and (iii) whether an objective third party could reasonably consider it to be a serious threat of physical injury (or another category of threat recognized by the guideline).  The ultimate issue remains that of whether the defendant committed the offense "because of" serious coercion, blackmail, or duress.  See United States v. Anderson, 139 F.3d 291, 300 (1st Cir. 1998) (no error where decision not to depart rested on the lack of "evidence of the coercive effect of [codefendant's] violence during . . . the relevant time period").

The Guideline's focus on the coercive effect on the defendant is the underlying logic, although not articulated there, of United States v. Pozzy, 902 F.2d 133 (1st Cir. 1990).  In Pozzy, this court reversed a duress downward departure on the ground that no evidence supported the view that a wife was coerced or threatened physically into taking an active role in her husband's cocaine business.  Id. at 139.  Rather, the evidence was that her motivation was the money to be made in the drug trade.  Id.  This court rejected the district court's reasoning that the wife was under an implicit threat because she had no alternative but to stay with her husband and help him or leave the marriage.  Id.

Here, the district court explicitly found that there were no actual threats and that Patel did not intend any such threats. Although the trial judge did not explicitly state that she found Sachdev's perception to be unreasonable, she did hold that the threat was missing "an objective component."[3] We read this as a finding that Sachdev's belief that he was in physical danger was not reasonable. We believe that on these facts such a finding was well within the purview of the district court. Given these factual findings, the district court was correct in concluding that it did not have authority to depart downward from the sentencing range prescribed by the Guidelines.

Affirmed.

---

[3]     Following this statement by the trial judge, counsel for Sachdev attempted to argue that Sachdev's father was a reasonable person who also perceived there to be a physical threat, and therefore the objective component was satisfied. The trial judge then reiterated her conclusion that she had no authority to depart under § 5K2.12.