# United States Court of Appeals
## For the First Circuit

No. 17-1229

UNITED STATES OF AMERICA,

Appellee,

v.

YNOCENCIO ARIAS-MERCEDES,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Pedro A. Delgado-Hernández, U.S. District Judge]

Before
Howard, Chief Judge,
Selya and Barron, Circuit Judges.

Eric Alexander Vos, Federal Public Defender, Vivianne M. Marrero, Assistant Federal Public Defender, and Liza L. Rosado-Rodríguez, Research and Writing Specialist, on brief for appellant.
Rosa Emilia Rodríguez-Vélez, United States Attorney, Thomas F. Klumper, and Francisco A. Besosa-Martínez, Assistant United States Attorneys, on brief for appellee.

August 16, 2018
[REDACTED OPINION]*

---

* The full version of this opinion was filed on July 30, 2018, and remains on file, under seal, in the Clerk's Office."

**SELYA**, **Circuit Judge**.    Defendant-appellant Ynocencio Arias-Mercedes challenges his 87-month incarcerative sentence as procedurally flawed and substantively unreasonable.    Among other things, his appeal poses questions about how a district court should apply the Sentencing Commission's revised commentary regarding mitigating role adjustments.    See USSG App. C, Amend. 794.    After careful consideration of these questions and the other issues raised on appeal, we affirm the challenged sentence.

## I. BACKGROUND

This appeal follows a guilty plea and, thus, we draw the facts from the plea colloquy, the undisputed portions of the presentence investigation report (PSI Report), and the transcript of the sentencing hearing.    See United States v. Fields, 858 F.3d 24, 27 (1st Cir. 2017); United States v. Dietz, 950 F.2d 50, 51 (1st Cir. 1991).    On April 24, 2015, the Coast Guard intercepted a 20-foot vessel off the coast of Dorado, Puerto Rico.    Aboard the vessel were 72.5 kilograms of cocaine and three men:    the defendant, Victor Mercedes-Guerrero (Mercedes), and Juan A. Concepción-García (Concepción).    Initially, the trio claimed to be Dominican nationals headed to Puerto Rico in search of work. Later, the defendant changed his tune and admitted his participation in a drug-smuggling enterprise.

On May 21, 2015, a federal grand jury sitting in the District of Puerto Rico returned a four-count indictment.    The

- 2 -

indictment charged all three men with conspiracy to import five kilograms or more of cocaine into the United States, aiding and abetting that conspiracy, conspiracy to possess with intent to distribute five kilograms or more of cocaine, and aiding and abetting that conspiracy.   See 18 U.S.C. § 2; 21 U.S.C. §§ 841(a)(1), 952(a), 960(a)(1), 963.   In due course, the defendant entered a straight guilty plea to all four counts.

The probation office prepared a PSI Report.  Because the offenses of conviction involved more than 50 kilograms but less than 150 kilograms of cocaine, the PSI Report recommended a base offense level of 34.  After factoring in a three-level credit for acceptance of responsibility, see USSG §3E1.1, the PSI Report suggested a total offense level of 31.  Coupled with a criminal history category of I, this offense level yielded a guideline sentencing range (GSR) of 108-135 months.  The GSR, however, was trumped in part by a statutory mandatory minimum of 120 months. See 21 U.S.C. §§ 841(b)(1)(A), 960(b)(1).

The defendant countered by moving for a downward departure or variance, making clear his objection to certain aspects of the PSI Report.  Pertinently, he argued that he had played only a minor role in the criminal activity and, therefore,

should receive a two-level role-in-the-offense reduction. <u>See</u> USSG §3B1.2. **[redacted]**[1]

The defendant took the position that, because he was a "mere transporter of the contraband," he deserved a mitigating role adjustment.[2] He argued that he was less culpable than Mercedes and other unindicted coconspirators (though he did not claim to be less culpable than Concepción). He also sought a downward departure or variance.

At the disposition hearing, the district court accepted the PSI Report's recommendations, except that it reduced the GSR to 87-108 months.[3] The court then determined that the defendant was not entitled to a minor participant reduction. Considering the newly constituted GSR and the factors delineated in 18 U.S.C. § 3553(a), the court proceeded to reject the defendant's entreaty for a downward departure or variance. Instead, it imposed concurrent 87-month terms of immurement on all four counts of conviction. This timely appeal followed.

---

[1] **[redacted]**

[2] The sentencing guidelines recognize two strains of mitigating role adjustments: minimal participant reductions, <u>see</u> USSG §3B1.2(a), and minor participant reductions, <u>see</u> <u>id.</u> §3B1.2(b). In this case, the defendant argues only that he should have received a minor participant reduction.

[3] **[redacted]**

**II. ANALYSIS**

We evaluate claims of sentencing error by means of a "two-step pavane." United States v. Matos-de-Jesús, 856 F.3d 174, 177 (1st Cir. 2017); see United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008). At the first step, we address claims of procedural error. See Gall v. United States, 552 U.S. 38, 51 (2007); Matos-de-Jesús, 856 F.3d at 177. If the sentence passes procedural muster, we then address challenges to its substantive reasonableness. See Matos-de-Jesús, 856 F.3d at 177. Here, we are confronted with claims of both procedural and substantive error. We discuss them sequentially.

## A. Alleged Procedural Flaws.

As a general matter, "claims of sentencing error are reviewed for abuse of discretion." United States v. Pérez, 819 F.3d 541, 545 (1st Cir. 2016). This standard is not monolithic. "Within it, 'we assay the district court's factfinding for clear error and afford de novo consideration to its interpretation and application of the sentencing guidelines.'" Id. (quoting United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013)).

1. **Mitigating Role.** The defendant's principal procedural plaint posits that the district court erred in refusing to grant him a minor participant reduction. See USSG §3B1.2(b). At sentencing, "[a] defendant who seeks a mitigating role adjustment bears the burden of proving, by a preponderance of the

evidence, that he is entitled to the downward adjustment."  Pérez, 819 F.3d at 545.  We have cautioned before that "[r]ole-in-the-offense determinations are notoriously fact-specific."  United States v. Cortez-Vergara, 873 F.3d 390, 393 (1st Cir. 2017) (quoting Pérez, 819 F.3d at 545).  "[A]bsent a mistake of law, battles over a defendant's status . . . will almost always be won or lost in the district court."  United States v. Graciani, 61 F.3d 70, 75 (1st Cir. 1995).

Against this backdrop, we look first to the applicable law.  The sentencing guidelines authorize a two-level reduction in a defendant's offense level if he "was a minor participant in any criminal activity" for which he is being held accountable.  USSG §3B1.2(b).  Prior to November 1, 2015, a two-pronged test was typically employed to determine a defendant's entitlement to such a reduction.  First, the court had to determine whether the defendant was "less culpable than most of those involved in the offenses of conviction."  United States v. Mateo-Espejo, 426 F.3d 508, 512 (1st Cir. 2005).  If so, the court proceeded to determine whether the defendant was less culpable than "most of those who have perpetrated similar crimes."  Id.

The legal landscape shifted when the Sentencing Commission, effective November 1, 2015, promulgated an amendment that displaced the second prong of the original test.  See USSG App. C, Amend. 794.  This amendment made pellucid that, in deciding

whether to grant a minor participant reduction, a sentencing court should not compare the defendant to hypothetical participants in similar offenses.[4] See id. Instead, the sentencing court should limit its inquiry to whether a given defendant is "substantially less culpable than the average participant in the criminal activity" in which he was involved. Id. §3B1.2, cmt. n.3(A). For this purpose, a "participant" is defined as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." Id. §3B1.1, cmt. n.1. We treat this revised commentary as authoritative. See Stinson v. United States, 508 U.S. 36, 38 (1993); United States v. Carrasco-Mateo, 389 F.3d 239, 244 (1st Cir. 2004).

The defendant contends that the court erred in performing this task because it did not properly identify the universe of participants. Specifically, the defendant complains that the court compared his conduct only to that of Mercedes and Concepción, not to the full pantheon of co-conspirators (whether indicted or unindicted) in the broader drug-smuggling enterprise. **[redacted]** This plaint lacks force.

---

[4] Even though the offenses of conviction occurred in April of 2015, the defendant was not sentenced until February 10, 2017. "Barring any ex post facto problem, a defendant is to be punished according to the guidelines in effect at the time of sentencing." United States v. Harotunian, 920 F.2d 1040, 1041-42 (1st Cir. 1990). Neither party disputes the sentencing court's decision to apply the version of the guidelines in effect on the date of sentencing.

Under the revised commentary — as before — the defendant bears the burden of showing that he was substantially less culpable than the average participant in the criminal endeavor. See United States v. De la Cruz-Gutíerrez, 881 F.3d 221, 225-26 (1st Cir.), cert. denied, 2018 WL 2064973 (2018). A defendant cannot carry this burden merely by showing "that he was a minimal or minor participant in the conspiracy overall." United States v. Coviello, 225 F.3d 54, 67 (1st Cir. 2000) (emphasis in original). Rather, he must focus on the offenses of conviction and "demonstrate that he was a minimal or minor participant in the conduct that formed the basis of his sentence." Id. To that end, the court must consider a universe composed of those involved in "his relevant conduct as a whole." United States v. Vargas, 560 F.3d 45, 50 (1st Cir. 2009); see United States v. Rodríguez De Varón, 175 F.3d 930, 944 (11th Cir. 1999) (en banc) (looking to "those participants who were involved in the relevant conduct attributed to the defendant"); see also United States v. Roberts, 223 F.3d 377, 381 (6th Cir. 2000) (similar). As we have explained, "[w]here a defendant is hired to transport a single shipment of drugs and does not otherwise participate in the larger conspiracy, his relevant conduct ordinarily will be limited to that shipment." Vargas, 560 F.3d at 49-50.

The defendant would have us believe that Amendment 794 expanded those parameters. We think not. The amendment simply

eliminated the need to compare a defendant's conduct with the conduct of hypothetical participants in similar offenses (the now-obsolete second prong of the original test). It does not require courts, when weighing mitigating role adjustments, to appraise a defendant's role in the broader conspiracy as opposed to his role in the specific criminal activity for which he is being held accountable. See USSG App. C, Amend. 794 (instructing courts to determine "defendant's relative culpability . . . only by reference to his or her co-participants in the case at hand").

The upshot is that with respect to identifying the universe of relevant participants, earlier precedent developed under the first prong of our minor participant jurisprudence remains velivolent, notwithstanding the promulgation of Amendment 794. See De la Cruz-Gutiérrez, 881 F.3d at 225-26. Since the district court colored within these lines, we hold that the defendant's claim of legal error in the court's application of section 3B1.2 is without substance.

This holding does not end our journey. Even when it hews to the correct legal rule, a district court must still exercise judgment to identify the universe of participants involved in the particular conduct that forms the basis of the defendant's sentence. Here, the defendant challenges the district court's exercise of that judgment — a challenge that we review for clear error. See Cortez-Vergara, 873 F.3d at 393.

The defendant pleaded guilty to conspiracy to import five kilograms or more of cocaine into the United States, conspiracy to possess with intent to distribute five kilograms or more of cocaine, and aiding and abetting both conspiracies. The charges were premised on the defendant's participation in a discrete enterprise: he was one of three men who brought a drug-laden vessel into the maritime jurisdiction of the United States. The defendant's base offense level was determined by reference to the specific drug quantity involved in that singular transport — not the amount trafficked through any broader conspiracy. It follows that the conduct for which the defendant is being held responsible is his role in that voyage. See Vargas, 560 F.3d at 50; cf. United States v. Olibrices, 979 F.2d 1557, 1559-60 (D.C. Cir. 1992) (refusing to compare defendant to participants in "overall conspiracy" when base offense level was determined with reference to narrower offense); United States v. Walton, 908 F.2d 1289, 1303 (6th Cir. 1990) (refusing to compare defendants to members in broader conspiracy because defendants had "only been held responsible for cocaine that they were actively involved in distributing — not the additional amounts involved in the entire conspiracy").

Given the scope of the conduct for which the defendant is being held accountable, there is no principled way in which we can find clear error in the district court's decision to limit its

comparison only to those persons directly involved in this particular drug-smuggle. See, e.g., De la Cruz-Gutiérrez, 881 F.3d at 225-27 (comparing defendant in maritime drug-transport case to others aboard vessel when considering minor participation reduction); Cortez-Vergara, 873 F.3d at 393 (similar); Pérez, 819 F.3d at 545-46 (similar). That the record contains "references" to unindicted and unidentified persons who had links to the broader criminal organization does not alter this conclusion. **[redacted]** [A] sentencing court cannot make mitigating role adjustments based on suppositions woven entirely out of gossamer strands of speculation and surmise. See Rodríguez De Varón, 175 F.3d at 944 (explaining that a sentencing "court should look to other participants only to the extent that they are identifiable or discernable from the evidence"); cf. Pérez, 819 F.3d at 546 (rejecting argument that defendant's "bit part" compared to drug "owners" and distributors entitled him to minor participant reduction). **[redacted]** After all, determinations relating to mitigating role adjustments are "invariably fact-specific," United States v. Meléndez-Rivera, 782 F.3d 26, 28 (1st Cir. 2015), and the court reasonably could have determined that the defendant had not carried his burden **[redacted]**.

With the district court's universe of comparable participants validated, we turn to the substance of the comparison. The defendant maintains that the district court clearly erred in

determining that he was not substantially less culpable than the average participant in the offenses of conviction.  Our review is for clear error.  See Pérez, 819 F.3d at 545.

The determination as to whether to grant a minor participant reduction is "based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case."  USSG §3B1.2, cmt. n.3(C).  The Sentencing Commission has provided a non-exhaustive list of factors to be considered:

> **(i)** the degree to which the defendant understood the scope and structure of the criminal activity;
> **(ii)** the degree to which the defendant participated in planning or organizing the criminal activity;
> **(iii)** the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
> **(iv)** the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
> **(v)** the degree to which the defendant stood to benefit from the criminal activity.

Id.

The court below found that, under the totality of the circumstances, the defendant "was not substantially less culpable than the average participant" in the drug smuggle.  In its view, the defendant understood the scope and structure of the criminal activity and knew that he was transporting narcotics.  By the

- 12 -

defendant's own account, he had agreed to participate in an illegal smuggling operation.[5]  Once aboard the vessel, the defendant's participation in the criminal activity was substantial:  he worked in tandem with the captain (Mercedes) to assure the success of the voyage.  Although he did not participate in either planning or organizing the criminal activity, he exercised a modicum of decisionmaking authority in steering and navigating the vessel toward its destination.

Last — but surely not least — the district court supportably found that the defendant stood to benefit from the criminal activity.  He was paid handsomely to traverse the Caribbean Sea and, in addition, received what he had sought all along:  passage to the United States.

"To be entitled to the role reduction, [the defendant] had to prove that he was <u>less</u> culpable than his cohorts."  <u>De la Cruz-Gutíerrez</u>, 881 F.3d at 226 (emphasis in original).  The district court found that he had failed to carry this burden, and that finding was not clearly erroneous.  The defendant's cohorts can be located on a continuum.  Mercedes, who had primary

---

[5] Of course, the defendant went to the port of departure anticipating that he would be assisting in the smuggling of illegal aliens, not the smuggling of narcotics.  That the criminal activity proved to involve a different cargo does not detract from the significance of the defendant's decision to join an illegal smuggling venture (although it may help to explain why the district court opted to sentence him at the bottom of the applicable guideline range).

responsibility for the voyage, stands at one end of the continuum. Concepción, whom even the defendant seems to admit was not a meaningful contributor to the enterprise, stands at the opposite end. The defendant, who was involved in the navigation and steering of the vessel, stands somewhere in the middle. Thus, the district court reasonably could have found that he was not substantially less culpable than the average participant. When a person undertakes to provide material assistance in transporting a large quantity of drugs as a member of a tiny crew in a hazardous voyage at sea, it ordinarily will not be clear error for the sentencing court to refuse him a mitigating role adjustment. See, e.g., Pérez, 819 F.3d at 546. So it is here.

In an effort to efface the district court's reasoning, the defendant argues that an offender who lacks a proprietary interest in the criminal activity should receive a mitigating role adjustment. In support, he relies on Amendment 794. His reliance, however, is misplaced. The commentary does not indicate that every such offender is entitled to a mitigating role adjustment; it merely instructs that every such offender "should be considered for a mitigating role adjustment." USSG App. C, Amend. 794. Here,

the court considered the defendant's importunings and found them wanting.

   **2. [redacted]**[6]

### B. Substantive Reasonableness.

   This brings us to the defendant's claim that his sentence is substantively unreasonable.  We review this claim of error for abuse of discretion.  See United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st Cir. 2015).

   "The 'linchpin' of substantive reasonableness review is an assessment of whether the sentencing court supplied a 'plausible sentencing rationale' and reached a 'defensible result.'" Rodríguez-Adorno, 852 F.3d at 177 (quoting Martin, 520 F.3d at 96).  This formulation recognizes that "[t]here is no one reasonable sentence in any given case but, rather, a universe of reasonable sentencing outcomes."  Clogston, 662 F.3d at 592. "Challenging a sentence as substantively unreasonable is [generally] a heavy lift," and this "lift grows even heavier where, as here, the sentence falls within a properly calculated GSR." Cortés-Medina, 819 F.3d at 572; see Rita v. United States, 551 U.S. 338, 347 (2007).

   We need not tarry.  The district court sentenced the defendant at the very bottom of the applicable guideline range

---

   [6] **[redacted]**

notwithstanding that the offenses of conviction involved a very large quantity of drugs. Even so, the defendant says that the court should have varied downward.

This is pie in the sky. The district court explained that it had balanced all the section 3553(a) factors and had mulled the defendant's personal circumstances. It concluded that an 87-month sentence was appropriate because after reviewing the defendant's background, studying his file, analyzing the arguments presented by defense counsel, and hearing defendant's allocution, "a sentence at the lower end of the guideline range . . . [was] just and not greater than necessary to promote the objectives of sentencing." This rationale is plausible, and the defendant has offered no convincing basis on which we might disavow it.

So too, the length of the sentence is easily defensible. The offenses of conviction were serious, and they involved a large quantity of drugs. Yet, the court chose a sentence at the nadir of a properly calculated GSR. Nothing in the record suggests a compelling reason to override the district court's exercise of its discretion.

To say more would be to paint the lily. We conclude, with scant hesitation, that the challenged sentence fell well within the wide compass of the district court's discretion. It was, therefore, substantively reasonable.

III. CONCLUSION

We need go no further.  For the reasons elucidated above, the sentence is

**<u>Affirmed</u>.**