# United States Court of Appeals
## For the First Circuit

No. 24-1235

UNITED STATES,

Appellee,

v.

NIVALDO DA CONCEIÇÃO LEVEL,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Barron, Chief Judge,
Montecalvo and Rikelman, Circuit Judges.

Leonardo M. Aldridge, with whom ECIJA-SBGB Law Offices was on brief, for appellant.
Maggie E. Utecht, Assistant United States Attorney, with whom W. Stephen Muldrow, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Ricardo A. Imbert-Fernández, Assistant United States Attorney, were on brief, for appellee.

June 16, 2026

**MONTECALVO, Circuit Judge.** On November 11, 2022, Nivaldo da Conceição Level ("Conceição Level") piloted an airplane carrying approximately 450 kilograms of cocaine from the Amazon jungle in Venezuela to Humacao, Puerto Rico. Immediately upon landing, law enforcement -- who had been targeting this drug venture through a sting operation approximately six months in the making -- boarded the plane and seized the drugs. Officers arrested Conceição Level and another man onboard, Hotaciano Pereira Dos Santos ("Pereira Dos Santos"). The two were charged with six counts of drug trafficking conspiracy and importation in the U.S. District Court for the District of Puerto Rico.

Conceição Level pled guilty to all counts and was sentenced to 135 months in prison. He now appeals his sentence on three grounds under the United States Sentencing Guidelines ("the guidelines" or "U.S.S.G."). He argues that the district court erred in: (1) applying a dangerous weapon enhancement (U.S.S.G. § 2D1.1(b)(1)); (2) denying a mitigating role adjustment (id. § 3B1.2); and (3) denying a departure for duress or coercion (id. § 5K2.12). Because we agree that the district court erred in its mitigating role analysis, we **vacate** Conceição Level's sentence and **remand** for resentencing.

## I. Facts

Because this appeal follows Conceição Level's guilty plea, we draw the facts from "the undisputed sections of the

presentence investigation report" ("PSR"), as well as "the transcripts of the change-of-plea and sentencing hearings." United States v. Trahan, 111 F.4th 185, 188 (1st Cir. 2024) (quoting United States v. Spinks, 63 F.4th 95, 97 (1st Cir. 2023)). To understand the conduct leading to Conceição Level's conviction, we backtrack to the origins of the sting operation.

In May 2022, undercover officers from the Drug Enforcement Administration ("DEA") started communicating with two "Regional Priority Organizational Target[s]": Carlos Javier Ruíz-Patiño ("Ruíz-Patiño") and Luis Guillermo López-Henao ("López-Henao"). In the officers' first call with these targets, Ruíz-Patiño laid the groundwork for an airplane drug venture involving approximately 500 kilograms of cocaine and noted that he would meet with his associates in Bogotá, Colombia, to coordinate further. The operation continued for close to six months, with officers speaking with target López-Henao nearly a dozen times to hammer out the details.

Conceição Level, a Brazilian pilot and owner of a flight school in Boa Vista, Brazil, became involved in this drug venture months later, in late fall of 2022. A Venezuelan man interested in taking pilot classes approached Conceição Level at his flight school. This man, who we'll call "the recruiter," offered Conceição Level a piloting job transporting mining equipment in Venezuela. Facing tough financial times at his flight school,

Conceição Level agreed to check out the job and invited his friend, fellow Brazilian Pereira Dos Santos, to accompany him.

Several days later, the recruiter drove Conceição Level and Pereira Dos Santos across the border to Venezuela, where they were transported to a camp deep in the jungle. Upon arrival, Conceição Level tested the airplane for flight-readiness. After seeing pictures of what he would be transporting, he became suspicious that it was not mining equipment after all and told the recruiter that "he did not want to do the job."

The recruiter, who had already been paid $5,000 for finding a pilot, told Conceição Level that "if he did the flight, [he] could return home," and promised to pay Conceição Level to complete the flight. Conceição Level and Pereira Dos Santos agreed to fly the "equipment" to an unnamed island.[1]

The two remained at the jungle encampment for some time while armed soldiers from the Colombian guerrilla group known as the "FARC" kept watch over them.[2] At some point, the initial flight that Conceição Level and Pereira Dos Santos had agreed to

---

[1] The details of the first planned flight are limited: the PSR indicates only that it was destined for an island and that Conceição Level and Pereira Dos Santos would be paid for completing the job.

[2] FARC is the Spanish acronym for the Revolutionary Armed Forces of Colombia. In addition to FARC soldiers, the PSR details several other named and unnamed individuals with whom Conceição Level and Pereira Dos Santos interacted during their time in Venezuela.

make was called off, apparently due to a dispute between the owner of the "contraband" and the owners of the airplane.[3]

In early November, Conceição Level and Pereira Dos Santos were transported to a different camp, and arrangements were made for a second flight. Conceição Level was offered $150,000 to pilot this flight carrying 450 kilograms of cocaine to Puerto Rico, and Pereira Dos Santos was offered $70,000 to assist with the delivery.

Meanwhile, the DEA targets, Ruíz-Patiño and López-Henao, had continued coordinating the drug delivery with the undercover agents, rescheduling the flight after complications arose waiting for the guerrilla members to authorize the plane's departure.

At last, on November 11, 2022, accompanied by Pereira Dos Santos, Conceição Level piloted the flight to Puerto Rico, transporting thirteen bales and three bundles of cocaine. After landing, law enforcement swiftly seized the plane and its contraband and took Conceição Level and Pereira Dos Santos into custody. Along with the cocaine, they recovered "a large military-style hunting knife," tools, and electronic devices from the plane, including GPS devices.

---

[3] The PSR states, "[Conceição Level] reported that while getting ready to depart, there was a discussion between the contraband owner and the owners of the airplane," leading to the first flight's cancellation.

## II. Procedural History

On November 16, 2022, Conceição Level and Pereira Dos Santos were indicted on six counts related to drug trafficking conspiracy and importation.[4] One year later, Conceição Level entered a straight plea to all counts.[5] Prior to his sentencing hearing, the U.S. Probation Office ("Probation") prepared a PSR recommending, among other things, a two-level dangerous weapon sentencing enhancement under section 2D1.1(b)(1) of the guidelines. In Conceição Level's sentencing memorandum and at his sentencing hearing on February 23, 2024, he objected to that recommendation and urged the district court to apply downward adjustments to his sentence for playing a mitigating role and

---

[4] They were charged with (1) narcotics conspiracy, in violation of 21 U.S.C. §§ 841(a)(1) and 846; (2) possession with intent to distribute narcotics, aiding and abetting, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; (3) narcotics importation conspiracy, in violation of 21 U.S.C. §§ 952(a), 960, and 963; (4) narcotics importation, aiding and abetting, in violation of 21 U.S.C. §§ 952(a) and 960, and 18 U.S.C. § 2; (5) conspiracy to possess controlled substances aboard an aircraft, in violation of 21 U.S.C. §§ 955, 960, and 963; and (6) possession of controlled substances aboard an aircraft, aiding and abetting, in violation of 21 U.S.C. §§ 955 and 960, and 18 U.S.C. § 2.

[5] Pereira Dos Santos, for his part, pled guilty to count three only (narcotics importation conspiracy) and was sentenced to ninety-seven months in prison and five years of supervised release. Prosecutors dismissed all other charges against him.

acting under duress, pursuant to sections 3B1.2 and 5K2.12 of the guidelines, respectively.

The district court disagreed on each of those fronts. Applying the dangerous weapon enhancement to Conceição Level's sentence and denying him the mitigating role adjustment and duress departure, it found that Conceição Level's total offense level was thirty-three and his criminal history was category I, yielding a guideline range of 135 to 168 months.  It sentenced Conceição Level at the lower end of that range, to 135 months.[6]  This timely appeal followed.

### III. Discussion

Before us, Conceição Level raises three claims of sentencing error concerning (1) the dangerous weapon enhancement, (2) the mitigating role adjustment, and (3) the duress departure. We review preserved sentencing challenges for abuse of discretion, "apply[ing] clear error review to factual findings, de novo review to interpretations and applications of the guidelines, and abuse of discretion review to judgment calls."  United States v. Melendez-Hiraldo, 82 F.4th 48, 54 (1st Cir. 2023) (quoting United

---

[6] The district court sentenced Conceição Level under the 2023 Guidelines, the version in effect at the time of his sentencing. See United States v. Harotunian, 920 F.2d 1040, 1041-42 (1st Cir. 1990).  We note this because the duress departure at section 5K2.12 has since been deleted from the guidelines, effective November 1, 2025.  U.S. Sent'g Guidelines Manual, §§ 5K2.0-5K2.24 [Deleted] (historical note at 445) (2025).

States v. <u>Nieves-Mercado</u>, 847 F.3d 37, 42 (1st Cir. 2017)). With these standards in mind, we turn to Conceição Level's challenges on appeal.

## A. Dangerous Weapon Enhancement

Conceição Level first takes aim at the district court's decision to apply the dangerous weapon enhancement to his sentence. At sentencing, he argued that the large military-style hunting knife found onboard the airplane could not "protect 400-plus kilos of cocaine" and was a necessary instrument of flight. Thus, he argued, it was "clearly improbable" that the knife was connected to the drug offense, and the enhancement should not apply. The government disputed this, calling to the stand a DEA special agent with piloting experience. The agent testified that this knife was not the typical kind used as an instrument of flight, instead listing pocketknives, seat belt cutters, and scissors as tools used in case of crash landings. And he further testified that a knife like the one found in this case could be used "to defend a drug load." The district court, in applying the enhancement, concluded that the knife in question, along with the amount of drugs seized, "[didn't] make it clearly improbable that [the knife] wasn't used to protect the cocaine."

Before us, Conceição Level posits that the district court erred in applying this enhancement because the knife was "an instrument of general aviation" and "was not used to protect the

drugs."  The government counters that the fact that knives can be aviation tools fails "to undermine the link" between this knife and the drug offense.  It maintains that Conceição Level failed to establish that a nexus between this knife and the cocaine smuggling "was clearly improbable."

We begin our analysis with the guidelines' text.  Section 2D1.1(b)(1) increases a criminal defendant's offense level by two levels for possession of "a dangerous weapon (including a firearm)."  U.S.S.G. § 2D1.1(b)(1).  Reflecting the "increased danger of violence when drug traffickers possess weapons," the enhancement applies whenever a dangerous weapon "was present, unless it is clearly improbable that the weapon was connected with the offense."  Id. § 2D1.1(b)(1) cmt. n.11(A) (emphasis added).  Indeed, in cases concerning drug offenses, we have clarified that "[o]nce the presence of a weapon is established," the enhancement will apply unless the defendant can point to "special circumstances" making it "clearly improbable" that its presence was connected to the drug trafficking offenses.  United States v. Lagasse, 87 F.3d 18, 22 (1st Cir. 1996); see also United States v. Corcimiglia, 967 F.2d 724, 728 (1st Cir. 1992) (citation modified).

Conceição Level points to no such circumstances.  The recovered weapon was a "large military-style hunting knife" found onboard a flight filled with hundreds of kilograms of cocaine. The government's expert witness testified that in his aviation

experience, pilots do not usually carry this type of knife onboard and provided examples of typical cutting tools often carried instead in flight. And he added that, in his experience as a DEA agent, this knife could defend a drug haul. Conceição Level failed to meaningfully contest these points before the district court, and his mere assertion on appeal that this "simple knife" could not defend a large quantity of drugs does not persuade us otherwise. Given that the expert testified that this was not the type of knife typically carried by pilots, the fact that it could theoretically be used as a tool of flight also makes no difference in these circumstances. See Corcimiglia, 967 F.2d at 727 (explaining that the mere fact that a different legal basis exists for possessing a weapon does not, on its own, prevent the application of the enhancement). Identifying no clear error in the district court's finding that it was not "clearly improbable that [this knife] wasn't used to protect the cocaine onboard," we affirm the application of the dangerous weapon enhancement.

## B. Mitigating Role Adjustment

Conceição Level next challenges the district court's denial of a mitigating role adjustment, arguing he was "less culpable" than the other conspiracy members.

At sentencing, in advocating for this adjustment, defense counsel cited a "related case" before the District of Puerto Rico, case number 23-085, where the government had "charged

a man and other people with being . . . the mastermind of this drug venture."  Conceição Level, counsel insisted, was "less culpable in the grand scheme of things" because, although he flew the airplane, he did not control the drugs, their amount, nor the date nor destination of the flight.  The government argued against the adjustment, pointing to United States v. Arias-Mercedes for support, where this court stated that "[w]hen a person undertakes to provide material assistance in transporting a large quantity of drugs as a member of a tiny crew in a hazardous voyage . . . it ordinarily will not be clear error for the sentencing court to refuse him a mitigating role adjustment."  901 F.3d 1, 8 (1st Cir. 2018).  The district court observed that "[h]ere," as in Arias-Mercedes, "there were only two Defendants."  Noting the large amount of drugs at issue, Conceição Level's role as the pilot, his conversations with the drug owners,[7] his test flight, his recruitment of Pereira Dos Santos, and the fact that he was offered

---

[7] Although not central to our analysis, we pause to explain the district court's observation about Conceição Level's "conversations" with "the drug owners."  The PSR says Conceição Level reported a "discussion" between the "contraband owner" and the airplane owners resulting in the cancellation of the first flight.  The government, apparently referencing this fact at sentencing, argued that Conceição Level told Probation "he was privy to a discussion between the owner of the cocaine and the owners of the airplane."  In the government's view, Conceição Level would not have been involved in such conversations had he been only a low-level participant.  Defense counsel countered that Conceição Level merely "overheard" sensitive details but was not an "affirmative participant" in such conversations.

twice as much money as Pereira Dos Santos to deliver the drugs, the court denied the adjustment.

Before diving into our analysis, some background about this adjustment is warranted. Section 3B1.2 of the guidelines allows for a two-level decrease to a defendant's offense level for being a "minor participant" in criminal activity, a four-level decrease for being a "minimal participant," and a three-level decrease for having a role that falls somewhere in between. U.S.S.G. § 3B1.2. A defendant bears the burden of proving his eligibility for this adjustment by a preponderance of the evidence. United States v. Robles-López, 169 F.4th 1, 4 (1st Cir. 2026).

This court recently clarified our mitigating role analysis in United States v. Guía-Sendeme, 134 F.4th 611 (1st Cir. 2025), a case involving maritime drug smuggling that addressed a misreading of our earlier precedent in Arias-Mercedes. To determine whether the adjustment applies, sentencing courts must conduct a four-step analysis: (1) "identify the universe of participants involved in the relevant criminal activity"; (2) "order each participant along a continuum based on the degree of culpability in the criminal activity"; (3) "identify the average participant across all likely participants in the criminal scheme"; and finally, (4) "compare the defendant's role in the criminal activity to the average participant's role," guided by a

list of non-exhaustive "3B1.2 factors" outlined in the guidelines' commentary.[8]  Guía-Sendeme, 134 F.4th at 617-18.

Because step one of this analysis is most relevant for our purposes, we focus there.  In determining the universe of participants, the sentencing court must first establish "the relevant conduct as a whole" by "identify[ing] the scope of the conduct for which the defendant is being held accountable."  Id. at 622 (citation modified).  For "jointly undertaken criminal activity," this includes not only activities performed during the offense but also those "in preparation" for it and in "attempting to avoid detection or [criminal] responsibility."  Id. at 619 (quoting U.S.S.G. § 1B1.3(a)(1)(B)).  Next, the court identifies the people who participated in the relevant conduct.  See id. at 622.  "[P]articipant[s]" are those "criminally responsible" for the offense, but they "need not have been convicted."  Id. at 617 (quoting Arias-Mercedes, 901 F.3d at 6).  Rather, "there must be sufficient evidence of [their] existence and involvement in the crime."  Id.  Put simply, they must be "discernable from the record."[9]  Id. (citation modified); see id. at 623.

---

[8] The guidelines instruct courts to conduct a fact-intensive inquiry that considers the nature of a defendant's participation in the crime, how much they understood its scope and structure, their involvement in its planning, their decision-making authority, and what they stood to gain from it.  See U.S.S.G. § 3B1.2 cmt. n.3(C).

[9] We pause here to explain how Guía-Sendeme clarified our mitigating role analysis and the meaning of this court's prior

- 13 -

Here, Conceição Level flew the cocaine from Venezuela to Puerto Rico, and Pereira Dos Santos helped him onboard. But critically, these two men did not act in isolation. The record reflects multiple other individuals involved in preparing this drug venture and shielding its detection from the authorities. See id. at 619; U.S.S.G. § 1B1.3(a)(1)(B). Recall that the PSR reflects that as early as May 2022, Ruíz-Patiño and López-Henao began communicating with undercover agents to set up this drug deal, communications which continued up until the plane's arrival

---

decision in Arias-Mercedes. See Robles-López, 169 F.4th at 5. To do so, we begin with Arias-Mercedes. The defendant in that case was one of three crew members intercepted aboard a drug-laden boat on its way to Puerto Rico. Arias-Mercedes, 901 F.3d at 4. In upholding the denial of the defendant's mitigating role adjustment, this court observed that when someone "transport[s] a large quantity of drugs as a member of a tiny crew in a hazardous voyage at sea," it is not usually clear error for the sentencing court to deny the adjustment. Id. at 8. Years later, when denying a different defendant's mitigating role adjustment in another drug smuggling case, the district court in Guía-Sendeme relied on the just-quoted statement from Arias-Mercedes to "narrowly circumscribe" the universe of participants to the apprehended crew members. Guía-Sendeme, 134 F.4th at 619. This court, in vacating that defendant's sentence, clarified that while comparing the defendant's culpability solely against the other crew members was correct in Arias-Mercedes, where the record did not reflect other "identifiable participants," Arias-Mercedes did not stand for "a broad rule" limiting the universe of participants to those onboard a drug smuggling vessel. Id. at 621-22. Rather, this court held, sentencing courts must "consider[] the record evidence to determine whether there [are] other discernable participants in the drug shipment." Id. at 623.

- 14 -

in Puerto Rico.[10]  And recall that the PSR also reflects that the recruiter transported Conceição Level and Pereira Dos Santos to Venezuela; additional individuals (named and unnamed) interacted with them upon their arrival; and FARC soldiers surveilled the jungle encampments where the drugs were kept.

Despite these individuals' potential involvement in the relevant conduct, they were absent from the district court's analysis, which instead focused narrowly on comparing Conceição Level's culpability vis-a-vis his co-defendant Pereira Dos Santos.[11]  That focus was understandable given that Conceição Level's sentencing hearing took place before this court decided Guía-Sendeme.  It is perhaps no surprise then, that, lacking the benefit of Guía-Sendeme's detailed mitigating role analysis, the district court began its discussion by referencing Arias-Mercedes and observing that, as in that case, "there were only two Defendants" here.  In so observing, the district court appeared to

---

[10] The PSR explicitly states "Ruíz-Patiño is related" to the offense here and lists the "related case[]" in which he was indicted.

[11] The district court noted that Conceição Level "recruited" Pereira Dos Santos and was set to "receive twice as much money" as him.  The district court briefly acknowledged the existence of some individuals outside of these two co-defendants (referencing the "drug owners," a "Mexican drug cartel," and "Venezuelan officials" who were bribed so that the flight could take off). But it did not compare Conceição Level's culpability relative to them, and so we interpret these statements only as part of the court's consideration of the 3B1.2 factors.

- 15 -

rely on the understanding of Arias-Mercedes that Guía-Sendeme only later corrected, namely, that a defendant's culpability should be compared only to the other crew members aboard a drug smuggling vessel.[12]

Before us, the government does not contest that the universe of participants was improperly defined at sentencing; in fact, at oral argument, it conceded that the district court erred under Guía-Sendeme. Rather, the government maintains that Conceição Level failed to preserve an argument about identifying the proper universe of participants before the district court and has waived this issue on appeal.

We disagree. As discussed, in arguing for the mitigating role adjustment at sentencing, Conceição Level drew the district court's attention to "related case" number 23-085, referencing Ruíz-Patiño as "the mastermind of this drug venture." Defense counsel insisted that Conceição Level was "less culpable in the grand scheme of things," since he did not "control the drugs" or the "amount," had no say over when or "where to fly," and did not "execute the planning." He acted solely as a "courier of the drugs," and thus, counsel urged, was eligible for the adjustment.

_____

[12] While not critical to our analysis, we pause to clarify that there were three crew members in Arias-Mercedes, and thus the district court may have simply misspoken when asserting that, as in Arias-Mercedes, there were just two defendants here. See 901 F.3d at 4.

On appeal, Conceição Level similarly argues that despite being essential to this drug venture, "he was less culpable than every other member of the conspiracy," compared to, for example, those who "dealt with drugs" and "protected them with firearms." He again argues that he was merely an "instrument" whose sole role was to fly the plane to a destination that the drug conspiracy's "leaders" had preordained.

Conceição Level thus identified discernable participants from the record, apart from just his co-defendant, and argued both here and before the district court that his culpability should have been measured against them. In so arguing, he alerted the district court of its error concerning the relevant universe of participants and has spelled out this argument to us on appeal. See United States v. Colón-Cordero, 91 F.4th 41, 50 (1st Cir. 2024) (discussing preservation); United States v. Guzmán-Ceballos, 144 F.4th 1, 6-7 (1st Cir. 2025) (procedural challenge preserved in similar circumstances); see also United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (discussing waiver). Thus, Conceição Level preserved this issue and has sufficiently raised it on appeal.

Because the district court, lacking the benefit of Guía-Sendeme's guiding framework, erred at step one of the mitigating role analysis, we must vacate Conceição Level's sentence on this ground and remand for resentencing. See

Robles-López, 169 F.4th at 3-4 (remanding under similar circumstances); Guzmán-Ceballos, 144 F.4th at 8-9 (same); United States v. Flores-Álvarez, No. 23-1163, 2025 WL 1369300, at *2-3 (1st Cir. May 12, 2025) (same).

## C. Duress Departure

Conceição Level's final challenge is to the district court's denial of a downward departure for duress or coercion under section 5K2.12 of the guidelines.

At sentencing, Conceição Level argued he merited the duress departure because the "underlying ecosystem of [the] encampment," which involved people in paramilitary fatigues carrying large weapons, created an "implicit threat" such that he could not leave. He also argued that he was threatened when the recruiter told him the only way to return home was by completing this flight. The government countered that no threat, whether explicit or implicit, had been made against Conceição Level and that, under United States v. Sachdev, 279 F.3d 25 (1st Cir. 2002), his subjective belief that he was threatened was not enough to warrant a sentencing departure for duress. The district court acknowledged that this was a "close call," but denied the departure. The judge concluded, "I don't think that a threat was articulated, and the Defendant's subjective belief that he was being threatened [was] not sufficient."

On appeal, pointing to the isolated, criminal environment he faced in the jungle encampments and the recruiter's statement that "if he did the flight, [he] could return home," Conceição Level argues that the district court erred in finding no "threat was articulated" and that his "subjective belief" that he had been threatened was not enough. The government counters that Conceição Level failed to make "an objective showing of a threat" and further failed to demonstrate that his participation in this drug venture was because of any threat.

Section 5K2.12 of the guidelines allows for a downward sentencing departure where "the defendant committed the offense because of serious coercion, blackmail[,] or duress." U.S.S.G. § 5K2.12 (2023). Generally, only coercion involving "a threat of physical injury" (or certain other harms specified in the guideline)[13] is sufficiently serious to warrant the departure. Id.

We have previously recognized that section 5K2.12 covers "both explicit and implicit threats of harm." Sachdev, 279 F.3d at 29. Critically, a defendant's "subjective belief" that they have been threatened, whether explicitly or implicitly, is not enough. Id. Rather, their subjective belief must be coupled with

---

[13] These other harms include "substantial damage to property" and "similar injury resulting from the unlawful action of a third party or from a natural emergency." U.S.S.G. § 5K2.12 (2023).

an objective determination that "a reasonable person in defendant's position would perceive" a threat of physical injury or one of the other harms articulated in section 5K2.12. Id. Ultimately, to apply the duress departure, the defendant must have "committed the offense 'because of' serious coercion, blackmail, or duress." Id.

In arguing that the district court erred in denying the duress departure, Conceição Level highlights how he was transported under false pretenses to a remote location in the Amazon, was surrounded by armed paramilitary members and drug traffickers, and feared death if he tried to leave. But as the government points out, the record fails to establish that any of the allegedly armed individuals "ever directed [their] guns or any threat of aggression at [Conceição Level]." And our review of the record confirms this.[14]

Similarly, concerning the recruiter's statement that if Conceição Level "did the flight, [he] could return home," Conceição Level argues that "[t]hese words[,] coming from individuals in [FARC] fatigues . . . with long weapons" in the Amazon constituted a "real threat to any person," and thus the district court erred

---

[14] For example, Conceição Level does not allege, and the record does not reflect, that the FARC soldiers ever brandished their weapons at him, physically harmed him or anyone else, or made any statement about injurious consequences for those who failed to comply with their orders.

in finding no threat had been made. But Conceição Level embellishes the facts and conveniently leaves some out of the picture. The PSR does not indicate that the recruiter wore a FARC military fatigue nor that he was armed. In fact, it is devoid of any indication that this man used or threatened physical harm towards Conceição Level or anyone else. The PSR merely states that when Conceição Level said he did not want to do the job, the recruiter "insisted" because he did not want to return the money he had been paid for recruiting Conceição Level. And immediately thereafter, it notes that to "persuade" Conceição Level to do the flight, the recruiter pointed to other airplanes arriving and departing from the camp and promised that Conceição Level would be paid "as soon" as he returned from the job.

We find clear error only where our review of the record leads to "a strong, unyielding belief that a mistake has been made." United States v. Fitzpatrick, 67 F.4th 497, 502 (1st Cir. 2023) (citation modified). And here, Conceição Level has failed to make such a showing. He has failed to direct us to evidence sufficient to show that the district court clearly erred in finding that a reasonable person in Conceição Level's place would not perceive a "serious threat of physical injury." See Sachdev, 279 F.3d at 29 (emphasis added). Because the district court's finding that no objective threat had been directed at Conceição Level is "supported by a plausible view of the evidence," we leave it

undisturbed.[15]  See United States v. Pontoo, 666 F.3d 20, 27 (1st Cir. 2011).  Identifying no clear error, we affirm the district court's denial of the downward departure for duress or coercion.

## IV. Conclusion

Accordingly, we **affirm** the district court's application of the dangerous weapon enhancement and its denial of a departure for duress.  We **vacate** Conceição Level's sentence given the district court's denial of the mitigating role adjustment and **remand** for resentencing consistent with this opinion and our decision in Guía-Sendeme.

---

[15] For the first time at oral argument, Conceição Level argued that the district court's statement that no "threat was articulated" erroneously "increased the [legal] threshold" by requiring a threat to be "explicit," contrary to this circuit's caselaw recognizing both explicit and implicit threats.  Absent extraordinary circumstances, arguments not raised in an opening brief, as here, are waived.  See Capen v. Campbell, 134 F.4th 660, 675 (1st Cir. 2025).