# United States Court of Appeals
## For the First Circuit

No. 23-1587

UNITED STATES OF AMERICA,

Appellee,

v.

CRYSTALL KAREEM ROBLES-LÓPEZ,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Raúl M. Arias-Marxuach, U.S. District Judge]

---

Before

Gelpí, Lipez, and Rikelman,
Circuit Judges.

---

MariaCarolina Gomez Gonzalez, Assistant Federal Public Defender, with whom Rachel Brill, Federal Public Defender, District of Puerto Rico, Franco L. Pérez-Redondo, Assistant Federal Public Defender, Supervisor, Appellate Unit, and Coral Rodríguez, Assistant Federal Public Defender, were on brief, for appellant.

W. Connor Winn, Assistant U.S. Attorney, with whom W. Stephen Muldrow, U.S. Attorney, Mariana E. Bauzá-Almonte, Assistant U.S. Attorney, Chief, Appellate Division, and Antonio L. Pérez-Alonso, Assistant U.S. Attorney, were on brief, for appellee.

February 3, 2026

**LIPEZ**, **Circuit Judge**.  Crystall Kareem Robles-López ("Robles"), the defendant-appellant, was recruited to carry cocaine in two suitcases on a flight from San Juan, Puerto Rico to Newark, New Jersey.  Authorities then discovered her two suitcases packed with cocaine before she even boarded the plane.  Subsequently indicted for both conspiring to possess and possessing with the intent to distribute the multiple kilos of cocaine found in the luggage, Robles pled guilty and was sentenced to forty-eight months' imprisonment, followed by an equal term of supervised release.  In this sentencing appeal, Robles contends that the court erred as a matter of law when, without properly conducting the required comparative culpability analysis, it denied her the three-level role reduction in her U.S. Sentencing Guidelines ("Guidelines") sentencing range, see U.S.S.G. § 3B1.2, that had been recommended by the U.S. Probation & Pretrial Services Office ("Probation").

We recently clarified the law on the evaluation of the eligibility of defendants for a Guidelines adjustment based on their lesser roles in a criminal enterprise. See United States v. Guía-Sendeme, 134 F.4th 611, 616-25 (1st Cir. 2025).  The district court imposed the sentence in this case before our clarification.  As we shall explain, without the benefit of that guidance, the court "fail[ed] to perform the correct mitigating role analysis." United States v. Guzmán-Ceballos, 144 F.4th 1, 8 (1st Cir. 2025)

- 3 -

(citing Guía-Sendeme, 134 F.4th at 623). We must therefore vacate the judgment and remand for resentencing so that the district court can properly assess Robles's eligibility for the role reduction. See id. at 9 (remanding for resentencing in similar circumstances); United States v. Flores-Álvarez, No. 23-1163, 2025 WL 1369300, at *2-3 (1st Cir. May 12, 2025) (same).

## I.

Before recounting the details of Robles's crime and the sentencing proceedings, we think it useful to briefly review the correct analysis for determining a defendant's eligibility for a § 3B1.2 mitigating-role adjustment. The purpose of the adjustment is to "ensure that a sentence reflects the defendant's actual role in the offense," yielding a Guidelines range that is consistent with "the defendant's relative culpability in the criminal activity." Guía-Sendeme, 134 F.4th at 620; see also United States v. Nkome, 987 F.3d 1262, 1273 (10th Cir. 2021) ("[T]he crux of § 3B1.2 is a defendant's relative culpability." (quoting United States v. Yurek, 925 F.3d 423, 446 (10th Cir. 2019))). Under the Guidelines, a defendant may be given a two-to-four-level reduction in the base offense level if the defendant is a minor or minimal participant in the relevant criminal activity. See U.S.S.G. § 3B1.2 cmt. nn.4-5 (defining a minor participant as "less culpable than most other participants in the criminal activity" and a minimal participant as "plainly among the least culpable of those

involved"); United States v. Walker, 89 F.4th 173, 185 (1st Cir. 2023) (noting that such a reduction to the offense level can be four levels for a minimal participant, two levels for a minor participant, and three levels if culpability falls somewhere between). Defendants bear the burden of proving by a preponderance of the evidence that they are eligible for this reduction. United States v. Arias-Mercedes, 901 F.3d 1, 5 (1st Cir. 2018) (quoting United States v. Pérez, 819 F.3d 541, 545 (1st Cir. 2016)).

In Guía-Sendeme -- a recent appeal involving a maritime drug smuggling conspiracy -- our circuit distilled a four-part analysis for sentencing courts to use in determining a defendant's relative culpability. 134 F.4th at 617. The court must: (1) identify the universe of participants involved in the relevant criminal activity; (2) order each participant along a continuum of culpability; (3) identify the average participant across all likely participants; and (4) compare the defendant's role in the criminal activity to the average participant's role. Id. The "average participant" terminology comes from the commentary to § 3B1.2, which states that mitigating-role sentencing adjustments apply to defendants whose role in the offense makes them "substantially less culpable than the average participant in the criminal activity." U.S.S.G. § 3B1.2 cmt. n.3(A). Hence, the "average participant" is not a "hypothetical" participant in an illustrative criminal scheme. Arias-Mercedes, 901 F.3d at 6.

Rather, the "average participant" is someone whose culpability is roughly in the middle of the spectrum between the most culpable and the least culpable participants in the criminal activity at issue. See id.; see also Walker, 89 F.4th at 185-86 (discussing the "vexing" nuances of this assessment in small-scale criminal enterprises).

We explained in Guía-Sendeme that the four-part relative culpability analysis should be guided by the commentary to § 3B1.2, which directs the court to evaluate five non-exhaustive factors (hereinafter "the § 3B1.2 factors") in determining eligibility for a role adjustment:

> i. The degree to which the defendant understood the scope and structure of the criminal activity;
>
> ii. The degree to which the defendant participated in planning or organizing the criminal activity;
>
> iii. The degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> iv. The nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
> v. The degree to which the defendant stood to benefit from the criminal activity.

Guía-Sendeme, 134 F.4th at 618 (quoting U.S.S.G. § 3B1.2 cmt. n.3(C)); see also Walker, 89 F.4th at 187 ("An evaluation of [the § 3B1.2] factors does not require extensive analysis, but it does require both a judgment about the defendant's own conduct and a comparison to the other participants." (internal citation omitted)). We then concluded that the sentencing judge legally erred at the outset of this analysis by "incorrectly assessing the universe of participants." Guía-Sendeme, 134 F.4th at 623. The court then "compounded" this error by just "recapitulat[ing] why [the defendant] was guilty of the offense," instead of comparing the defendant's conduct to that of the other participants to "illuminate . . . relative culpability." Id.

We observed in Guía-Sendeme that the district court's error stemmed at least in part from a misreading of our prior decision in Arias-Mercedes.[1] See id. at 620-23 (discussing the analysis and holding in Arias-Mercedes, 901 F.3d at 6-8). In

---

[1] While the Guía-Sendeme four-part analysis was articulated in response to this misreading of our own precedent, other circuits have similarly endeavored to guide how sentencing judges assess a defendant's relative culpability. See, e.g., United States v. Chichande, 113 F.4th 913, 916, 921 (9th Cir. 2024) (though "precedent does not require a district court to use a mathematical calculation," district courts must engage in a "three-part test" to assess § 3B1.2 eligibility) (discussing United States v. Dominguez-Caicedo, 40 F.4th 938, 960 (9th Cir. 2022) (to assess role-reduction eligibility, the court must: (1) identify all participants in the defendant's crime; (2) calculate a "rough average" level of culpability for all the participants, considering the § 3B1.2 factors; and (3) compare the defendant's culpability to that rough average)).

construing Arias-Mercedes, a case which similarly involved maritime drug smuggling, the government and the sentencing judge narrowly read our focus on the defendant's role in the "voyage" to restrict the relevant "universe of participants" to the individuals caught on the boat with the drugs. Id. at 619-20; see also id. at 622-23. We explained that, to the contrary, when our comparative role analysis in Arias-Mercedes is properly "read as a whole," and against the backdrop of the commentary to the Guidelines, our reference to a "voyage" was plainly used to describe all aspects of the "single drug shipment" in which the defendant was personally involved. Id. at 622.

We thus held that, in making its average participant determination, the sentencing judge in Guía-Sendeme should have considered not only the activity that occurred on the boat but also evidence that the defendant had cited in the record of individuals who helped recruit other participants, loaded and unloaded the narcotics on and off the vessel, and monitored for law enforcement. Id. at 620, 623. Following Guía-Sendeme, we vacated sentences imposed in two additional "drug mule"[2] cases on

---

[2] A drug mule is slang for "a simple courier" in a broader drug conspiracy who may play little to no role in other aspects of the drug operation (e.g., dealing or supply negotiations). See United States v. Quinones-Medina, 553 F.3d 19, 22, 23 (1st Cir. 2009); see also United States v. Jurado-Lopez, 338 F. Supp. 2d 246, 247 (D. Mass. 2004) ("Her crime was being a drug 'mule' -- in effect acting as a human container for drugs, as well as carrying them in the false linings of her luggage.").

nearly identical grounds. In Guzmán-Ceballos, another case involving a maritime drug smuggling conspiracy, we concluded that "[it] was error under our § 3B1.2 precedent" for the sentencing court to "not consider the record evidence to determine whether there were other discernible participants in the drug shipment outside of the 'three people on th[e] boat,'" including those on the beach when the vessel departed. 144 F.4th at 8. Likewise, in Flores-Álvarez, an unpublished decision involving an aviation drug smuggling ring, we concluded that the court improperly focused only on the defendant's own conduct in the airport without considering steps taken by participants who planned the trip -- which "might perhaps have included those who procured the narcotics in the suitcase and the person in [the destination city] scheduled to receive the shipment." 2025 WL 1369300, at *3.[3]

With the correct analysis in mind, we turn now to the circumstances presented here, explaining why we again agree with the defendant that the sentencing court erroneously performed the mitigating-role inquiry.

---

[3] However, to understand a defendant's identification as a drug mule or courier as "a talisman that automatically opens a pathway to a minor role adjustment," would plainly misconstrue the holdings from the Guía-Sendeme line of cases. Quinones-Medina, 553 F.3d at 23. Our circuit has long recognized that even if "[s]ome couriers may be fringe participants in a drug-trafficking scheme," there is no doubt that "others may be more central to the plot." Id.

As this sentencing appeal follows a guilty plea, we draw the facts from the plea agreement, the change-of-plea colloquy, the presentence investigation report (the "PSR"), and the transcript of the disposition hearing. United States v. Lessard, 35 F.4th 37, 40 (1st Cir. 2022) (quoting United States v. Almonte-Nuñez, 771 F.3d 84, 86 (1st Cir. 2014)).

## A. Background

In the early morning of July 1, 2020, Transportation Security Administration ("TSA") personnel at the Luis Muñoz Marín International Airport in San Juan were alerted to a suitcase packed with numerous brick-shaped packages deemed consistent with drug trafficking. Law enforcement authorities determined that the bag had been checked at the luggage counter by Robles -- a passenger booked on a commercial flight to Newark departing that evening. They opened the bag and discovered six bricks of suspected cocaine. Drug Enforcement Administration ("DEA") Task Force agents then retrieved a second suitcase, also checked by Robles, which they opened and searched with Robles's consent after a drug-detection K-9 dog indicated the presence of narcotics. The agents found five additional bricks in the second suitcase. Robles was arrested at the airport and taken into custody.

Per DEA field testing and a subsequent chemical analysis report, the confiscated packages were confirmed to contain a total

net weight of approximately eleven kilograms of cocaine. In her post-arrest statement, Robles admitted that she had agreed to transport prepacked suitcases on a plane to Newark in exchange for $1,500 paid upon delivery and that she checked the luggage knowing it likely contained drugs or money. The $1,500 proffered payment was less than one percent of the projected street value of the cocaine, calculated by the government to be somewhere between $154,000 to $225,500.

On December 19, 2022, without any agreement on sentencing, Robles pleaded guilty to conspiring to possess with the intent to distribute five kilograms or more of cocaine and possessing with the intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. In so doing, Robles stated that she committed the necessary elements of each offense "knowingly and intentionally" and with the "specific intent to distribute" the cocaine.

## B. The PSR's Recommended Role Reduction

Probation submitted a PSR to the district court in which it calculated a Guidelines sentencing range of fifty-one to sixty-three months' imprisonment. Probation started with a base offense level of 30 (per the weight of the confiscated cocaine) and a criminal history category of I (as Robles had no prior record). Probation then determined that Robles was entitled to both a three-level acceptance-of-responsibility reduction, see

U.S.S.G. § 3E1.1(a)-(b), and a three-level adjustment for her role in the offense pursuant to § 3B1.2, resulting in a total offense level ("TOL") of 24.

When describing the relevant conduct that formed the basis of the TOL, Probation outlined the involvement of several specific individuals in addition to Robles:[4] two recruiters who welcomed Robles into the fold (hereinafter "the Recruiter" and "the Organizer Recruiter") and then introduced her to their contact -- "the Organizer." Based on investigative reports, Probation described how, in subsequent WhatsApp chats over about a two-week period, the Organizer outlined for Robles the skeletal contours of the San Juan-to-Newark drug courier role, including that one of the recruiters would be tasked with making all of her travel arrangements, the details of which would be shared with Robles only on a need-to-know basis.

The PSR also detailed the hours leading up to Robles's arrest. The night before her flight, Robles was picked up by a man Robles had not met in person, but who may have been the same person as the Organizer. This unknown man (the "U.M.") drove Robles to a location that resembled a hotel, where he proceeded to collect a room key from a hidden location before escorting her to

---

[4] Much of the record before us is sealed. We recount here only salient and publicly available information, including the pseudonyms for these additional individuals used by counsel at oral argument.

a second-story room where she was to remain until summoned. At some point around this time, Robles followed instructions provided by the recruiters via WhatsApp chat messages to fix an error on her flight booking.

The following morning, the U.M. called Robles to tell her that it was time to go. The U.M. then drove her to the airport in the same car used the night before. Upon arriving, he told her to retrieve two pre-packed suitcases from the trunk while he remained in the car. Robles followed the U.M.'s instructions to proceed directly to the check-in counter with the baggage, bypassing the U.S. Department of Agriculture ("USDA") checkpoint because USDA stickers were already affixed to each suitcase indicating that they were cleared for check-in. Robles then checked the two suitcases that were intercepted by law enforcement later that morning.

In the PSR, Probation also described Robles's extensive experiences with trauma, including substance abuse disorder, abusive relationships, and pervasive economic insecurity. The report also indicated, among other things, that Robles had never flown on an airplane or "travelled outside the island" of Puerto Rico.

Focusing on Robles's role in the charged conduct, Probation assessed that role as between "minimal" and "minor." Referencing the § 3B1.2 factors, Probation explained that "the

- 13 -

totality of the circumstances" evidenced that "Robles did not plan or organize the criminal activity, had no decision-making authority as to the criminal activity, and the extent of her participation was limited to the instant matter."

**C. The Government's Objection to the Recommended Role Reduction**

At the end of May 2023, the government filed a formal objection to the PSR's inclusion of a three-level role reduction. Employing logic similar to that expressed by the sentencing judge in Guía-Sendeme, 134 F.4th at 619-20, the government asserted that our Arias-Mercedes precedent made clear that Robles, as the only conspirator in the airport with the luggage, was indisputably "indispensable."[5]  Hence, the government argued, given both the large quantity of drugs Robles was entrusted to carry and the sizeable remuneration she was promised for that single shipment, Robles was ineligible for the recommended three-level reduction in her TOL.

The government reiterated its objection to the PSR in a subsequently filed sentencing memorandum, again arguing to the court that no role reduction was warranted.  Proposing a TOL of 25,[6] the government requested a low-end Guidelines sentence of

_____

[5] The government's objection was submitted after the January 18, 2023 sentencing hearing for Guía-Sendeme, but well before our panel decision vacating that sentence, which was issued on April 4, 2025.  See Guía-Sendeme, 134 F.4th at 615, 626.

[6] Like the PSR, the government's calculated TOL began with a base offense level of 30 and included a three-level reduction for

- 14 -

fifty-seven months, taking into consideration what it acknowledged to be Robles's "significant mitigating circumstances."

In a written response to the government's objection, Robles urged the court to grant the adjustment recommended by Probation, contending that Probation's analysis had closely and appropriately adhered to the factors included in the Guidelines commentary for U.S.S.G. § 3B1.2. She pointed out that the government had not disputed the factual background described in the PSR, which identified multiple, identifiable participants in the relevant criminal endeavor from the time of Robles's recruitment to her arrest. Then, to support her contention that she was "[s]ubstantially less culpable than the average participant" in that criminal activity, Robles emphasized that it was the Recruiter, the Organizer Recruiter, and the Organizer/U.M. who "handled all the coordination" of the drug transport, had "decision-making authority," "provided all the instructions," and supplied the luggage pre-packed with drugs and with pre-affixed USDA stickers. Robles pointed out that, by contrast, her role was limited to following instructions from others.

---

acceptance of responsibility. The government also credited Robles with an additional two-level reduction based on its determination that she qualified for relief under 18 U.S.C. § 3553(f), resulting in a TOL of 25. See also U.S.S.G. §§ 2D1.1(b)(18), 5C1.2.

Relying on Probation's recommendation of a three-level mitigating-role reduction, Robles proposed a TOL of 20[7] -- with a Guidelines range of thirty-three to forty-one months -- and requested a variant sentence of time served.[8] Robles also submitted a sentencing memorandum that provided additional detail regarding the extensive mitigating personal circumstances referenced in the PSR, including substance-use disorder, childhood neglect, and trauma, including physical and sexual abuse.

**D. The June 20, 2023 Sentencing Hearing**

Without inviting additional argument by the parties, the district court judge started Robles's sentencing hearing by announcing that it had reviewed the parties' written submissions and would sustain the government's objection to the PSR's recommended three-level § 3B1.2 role reduction. Relying once again on Arias-Mercedes, the judge proceeded to observe that our circuit's precedent instructs that in cases involving one-time

---

[7] To arrive at this TOL, Robles followed the PSR's calculation for an offense level of 24 and then subtracted the additional two-level deduction conceded by the government. She also proposed that she be considered eligible for a new but not-yet-effective Guidelines adjustment lowering the Guidelines calculation another two levels for defendants with zero points in their criminal history category. At the close of the sentencing hearing, the judge indicated that he had incorporated these requested adjustments into Robles's sentence.

[8] Robles was ordered to be detained pending trial on August 15, 2022, and had therefore served a little over ten months at the time of her June 20, 2023 sentencing.

drug couriers like Robles with little to no involvement in the broader drug trafficking conspiracy, the sentencing court must limit its consideration to the particular drug transaction in which the defendant was involved. See Guía-Sendeme, 134 F.4th at 619-20. And here, the judge said, that conduct was only Robles's "attempt[] to transport cocaine from San Juan to Newark in her luggage."

The judge then noted that, given this limitation, it did not matter that there were "two" other "participants who recruited her" or that Robles "might not have planned the trip." As it was Robles alone who "agreed to transport suitcases she thought had drugs or money to Newark, accepted the luggage containing the narcotics, and checked it into a . . . flight to Newark in which she was to travel" -- and it was Robles alone who "exercised a degree of discretion" when she "agreed to transfer the drugs and took the aforementioned steps with the expectation of" payment -- the judge concluded that he could "not say that Ms. Robles was a minor participant."

Robles objected to the court's ruling, first arguing that Arias-Mercedes was distinguishable. She noted that the defendant in that case was "at the same level" as the other participants, whereas here "the only thing [Robles] did was follow instructions," and otherwise "her participation was limited to the minimal conduct necessary" to commit the charged offenses. Robles asserted further that, even if her role was in fact "indispensable"

- 17 -

to the commission of the crime, the Guidelines do not foreclose a role reduction on that basis and, to the contrary, indicate that a defendant who was "only going to be paid for the transaction" (as opposed to having "an interest on the property") is "not disqualif[ied] for a minor or minimal role." See U.S.S.G. § 3B1.2 cmt. n.3(C). Robles then concluded by stating: "I understand the Government's point but this is not the correct analysis and I don't want for the Court to understand that that is the correct analysis. The correct analysis is the one that the Probation Officer did."

Proceeding to the sentencing, the court found a TOL of 25 and a criminal history category of I, yielding a Guidelines sentencing range of fifty-seven to seventy-one months. The court then granted a downward variance based on the uncontroverted "significant mitigating circumstances" presented, settling on a forty-eight-month sentence of imprisonment and forty-eight months of supervised release.

At the close of the hearing, Robles objected to the length of the sentence imposed and then repeated her earlier objection to the court's decision not to apply the minor role adjustment recommended by Probation. Counsel stated that "procedurally, it is not correct to apply those factors . . . the Court actually went with" and that Robles wanted to specifically "import everything [counsel had] written into these objections."

As a threshold matter on appeal, the government argues that Robles failed to preserve her procedural challenge to her sentence because her objections below were too general and that she also waived plain error review because she did not address the preservation issue in her briefing. See, e.g., United States v. Fígaro-Benjamín, 100 F.4th 294, 310 (1st Cir. 2024) ("[W]hen arguments were not raised below, they will be reviewed for plain error -- but when an appellant does not address that daunting test, we will deem those arguments waived." (citing United States v. Pabon, 819 F.3d 26, 33 (1st Cir. 2016))). We therefore turn first to the appropriate standard of review before addressing the district court's determination on the role adjustment.

## A.  Standard of Review

To be sure, as the government asserts, a defendant's objection must "be sufficiently specific to call the district court's attention to the asserted error." United States v. Reyes-Correa, 81 F.4th 1, 10 (1st Cir. 2023) (quoting United States v. Soto-Soto, 855 F.3d 445, 448 n.1 (1st Cir. 2017)). A "generic" objection therefore will be inadequate to preserve an issue for appeal when it cannot be "fairly interpreted as giving notice to the [sentencing] court" of the "particular" issue of concern. United States v. Colón-Cordero, 91 F.4th 41, 50 (1st Cir. 2024) (quoting parenthetically United States v. Ahrendt, 560 F.3d 69, 76

(1st Cir. 2009)). But, to provide adequate notice, the defendant's "objection need not be framed with exquisite precision." Reyes-Correa, 81 F.4th at 10 (quoting United States v. Rivera-Berríos, 968 F.3d 130, 134 (1st Cir. 2020)).

Here, Robles objected repeatedly to the court's analysis of her eligibility for a mitigating-role reduction. As noted, she urged the court to instead adopt the reasoning articulated in the PSR comparing her role to that played by other participants identified in the PSR. Then, after the district court rendered its sentence, she renewed her objection to the court's analysis of her eligibility for a role reduction, explicitly incorporating into that renewed objection the arguments made in her written filing. Fairly reviewing this record, there is no doubt that the sentencing judge was on notice of Robles's procedural challenge to her sentence.[9]

---

[9] We do recognize that Robles missed an opportunity at the hearing to contemporaneously correct a possible misstatement by the court as to the correct number of individuals involved in the charged conspiracy. The judge remarked in his initial colloquy that "there were [two other] participants who recruited [Robles]," apparently neglecting the role of the Organizer/U.M. Any such oversight by Robles is immaterial here. First, the government itself described to the court actions taken by the Organizer/U.M. to plan the drug smuggling operation, making it clear that there were at least three individuals in addition to Robles also involved in the drug transport at issue. Moreover, irrespective of whether there were only two additional participants or whether there were more, the court's analysis focused solely on the steps taken by Robles herself.

Hence, we review Robles's preserved procedural sentencing challenge for abuse of discretion. See Guzmán-Ceballos, 144 F.4th at 6. "Under the multilayered abuse of discretion standard, we review the district court's findings of fact for clear error and afford de novo review to claims regarding the district court's interpretation and application of the Guidelines." Id. When our review is primarily "a fact-specific exercise, 'we rarely reverse a district court's decision regarding whether to apply a minor role adjustment.'" Id. at 7 (quoting Walker, 89 F.4th at 185). However, "[t]he district court commits reversible legal error when it fails to perform the correct mitigating role analysis." Id. at 8; see also id. at 7 (observing that an error of law "by definition" constitutes an abuse of discretion (quoting United States v. Quirós-Morales, 83 F.4th 79, 85 (1st Cir. 2023))).

## B.  The Required Mitigating-Role Analysis

Given the reasoning in the Guía-Sendeme line of cases, the sentencing court here legally erred in its assessment of Robles's eligibility for the PSR-recommended role reduction.

The analysis conducted by Probation, and adopted by Robles, aligns with our precedent establishing that, in cases involving one-time couriers not involved in the broader drug trafficking conspiracy, the focus of the mitigating-role analysis must be limited to the "particular drug-smuggle" in which the

defendant was personally involved. Guía-Sendeme, 134 F.4th at 620 (quoting parenthetically Arias-Mercedes, 901 F.3d at 7); see also, e.g., Arias-Mercedes, 901 F.3d at 7 (citing United States v. Walton, 908 F.2d 1289, 1303 (6th Cir. 1990) (declining to compare the defendants to members in a broader conspiracy where the defendants had "only been held responsible for cocaine that they were actively involved in distributing -- not the additional amounts involved in the entire conspiracy")). But the sentencing judge and the government misunderstood this proposition, narrowing the scope of its relative culpability analysis too far.

Instead of identifying the "relevant conduct as a whole" to determine the "field of comparators" -- the "essential starting point" of a meaningful relative culpability analysis -- the district court recognized only the steps Robles herself took to smuggle the two suitcases of cocaine through the airport and onto the plane. Guía-Sendeme, 134 F.4th at 617, 621-22 (discussing "relevant conduct as a whole"); id. at 619 (discussing "field of comparators" and "essential starting point"); see also Flores-Álvarez, 2025 WL 1369300, at *3. By declining to consider any "activities . . . undertaken 'in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense,'" the court failed to identify the full universe

of relevant participants.[10]  Guía-Sendeme, 134 F.4th at 619 (quoting U.S.S.G. § 1B1.3(a)(1)(B)).

Nor did the court engage with the § 3B1.2 factors it was supposed to use to guide its comparative analysis.  Instead, it merely recited them to reiterate the facts that made Robles guilty of the crimes for which she was charged.  See id. at 624 ("The purpose of the § 3B1.2 factors is not to establish guilt; it is to help a court decide whether to apply leniency because a defendant, while guilty, played a substantially subordinate role in the criminal activity.").  In so doing, the court incorrectly highlighted Robles's expected payment as a negative factor and placed inappropriate determinative weight on the government's

---

[10] The government makes an unsupportable attempt in its appellate briefing to cast Robles as "the star of the show" and the "primary player" in the conspiracy, making assertions about her role and activities that are patently inconsistent with uncontroverted record evidence.  It suggests, for example, that Robles understood the "main crux of the criminal activity" more than any other participant, hailed Uber rides to take herself to the hotel and then to the airport, and "exercised discretion in how she maneuvered the cocaine to minimize the potential to get caught in a highly policed environment."  As the government well knows, Robles had never previously flown on an airplane, and was transported to the hotel and to the airport by a coconspirator who happened to have an Uber sticker affixed to his car.  Indeed, the government's depiction of Robles's role is even inconsistent with its own descriptions of her role in its written and oral objections to the PSR -- e.g., the government observed at the sentencing hearing that "[t]he organization helped make [Robles's] travel arrangements" and "[Robles] checked in the luggage as per the instructions that she had received which included not passing them through the U.S.D.A. checkpoint."  See supra note 9.  These exaggerations and inconsistencies by the government are troubling.

- 23 -

assertion that her role was indispensable to the success of the criminal endeavor, despite the Guidelines' direct guidance to the contrary.  See U.S.S.G. § 3B1.2 cmt. n.3(C) (noting that "a defendant who . . . is simply being paid to perform certain tasks should be considered for an adjustment" and cautioning that "an essential or indispensable role in the criminal activity is not determinative" of eligibility); see also Walker, 89 F.4th at 188 (noting that whether the defendant played an integral role "is not the correct legal standard").

These legal errors require remand so that the court can follow each step of the proper relative culpability analysis to assess Robles's role.[11]  That is, the district court must, on the record, first correctly "consider the scope of [Robles's] relevant conduct and then decide, based on the record, which individuals were sufficiently involved in that conduct such that they should be included in the universe of participants under U.S.S.G. § 3B1.2."  Guía-Sendeme, 134 F.4th at 623; see also id. at 617

_____

[11] Given that she was apparently credited for prison time she served prior to her June 2023 sentencing hearing, and the fact that she had been incarcerated for another twenty-two months before we heard her appeal, Robles's projected release date at the time of her March 2025 appellate argument was September 7, 2025.  Per the online Bureau of Prisons ("BOP") Inmate Locator, however, Robles was no longer in BOP custody as of May 6, 2025 (i.e., about two months following oral argument and one month following the publication of Guía-Sendeme) and presumably is now serving her forty-eight-month term of supervised release -- the conditions and length of which will be revisited on remand.

("First, it must identify the universe of participants involved in the relevant criminal activity."). Performing the remainder of the four-part analysis outlined in Guía-Sendeme in accordance with the Guidelines, the sentencing court must use the non-exhaustive § 3B1.2 factors to: (2) "order each participant along a continuum based on the degree of culpability in the criminal activity"; (3) "identify the average participant across all likely participants in the criminal scheme"; and, finally, (4) "compare the defendant's role in the criminal activity to the average participant's role." Id. at 617; see also Walker, 89 F.4th at 187-88 (a sentencing court must give sufficient explanation of its analysis on the record to allow for "meaningful appellate review" (quoting Gall v. United States, 552 U.S. 38, 50 (2007))).

*** 

We **vacate** Robles's sentence and **remand** to the district court for further proceedings consistent with this opinion.

**So ordered.**